THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* FRANK MORSE, Defendant-Appellant.

(No. 71-257; ▮▮▮▮▮▮▮▮▮▮)

Fifth District—October 22, 1975.

*Rehearing denied November 19, 1975.*

Paul Bradley and Jan H. Stonecipher, both of State Appellate Defender's Office, of Chicago, for appellant.

Guy Lahr III, State's Attorney, of Metropolis (William B. Ballard, Jr., of State's Attorneys Task Force, of counsel), for the People.

Mr. JUSTICE KARNS delivered the opinion of the court:

Defendant-appellant, Frank Morse, was convicted of arson after a jury trial in Massac County and was sentenced to serve from 5 to 20 years' imprisonment. On appeal he alleges that he was not proved guilty beyond a reasonable doubt, that the court erred in allowing the State to cross-examine its own witness with prior inconsistent statements, that the court erred in allowing certain cross-examination of the defendant,

that the court erred in allowing certain closing argument by the State, and that the sentence imposed is excessive.

The principal witness for the State was Charles Chaney, an accomplice. He testified that on the night of the offense he, the defendant, and one Isabell Kean were together. After driving around in defendant's car for some time, drinking an unspecified quantity of beer, they arrived at the Knotty Pine Tavern in Joppa, Illinois, which was then closed. Leaving Kean in the car, Chaney and the defendant went behind the tavern. Chaney stated that one of them had poured gasoline on the back of the tavern and the other had lit the gasoline but could not remember who had done what. At this point, the State's Attorney, in chambers, stated to the court that he was surprised by Chaney's testimony and asked the court to declare Chaney a hostile witness. Chaney was advised of his constitutional rights and asked to speak with an attorney. An attorney was appointed and immunity from prosecution was secured.

Over the strenuous objection of defense counsel, the court declared Chaney a hostile witness. Before the jury, the State was allowed to question Chaney about two prior unsworn statements he had given. The statements contradicted each other on several points, including the car the defendant was driving, the previous movements of defendant, Chaney, and Kean, and the reasons for the fire. But the major element of the prosecution, that defendant and Chaney had started a fire at the tavern late in the evening, remained consistent in Chaney's testimony and prior statements.

Isabell Kean testified that she had accompanied Chaney and defendant to the tavern at which point the two men left the car. Upon their return, defendant indicated that the building was on fire and the three left in defendant's car. Her testimony contradicted that of Chaney's in minor respects, and she stated that she could not see what the men were doing from the car.

Two State's witnesses established that defendant had owned an old Dodge automobile at the time of the offense and identified photographs of the car.

Three witnesses seated on a porch across the street from the tavern noticed a light green Dodge, which they believed to belong to the defendant, leave the tavern parking lot immediately after the fire began. None could recognize any of the occupants, however.

James Christmas, fire and police chief of Joppa, Illinois, testified that he had been parked across the street from the tavern for over three hours on the evening of the fire and had seen defendant, Chaney, and an unidentified third party drive past three times in defendant's green Dodge, which the witness identified. After the witness went home, he

was notified of the fire. Upon his return he smelled gasoline and noticed that the concrete steps of the tavern and gravel behind it were burning. The evidence about the nature of the fire was corroborated by two other witnesses. Both saw defendant and his car at the tavern while the fire was being extinguished.

The owner of the tavern testified that he had given no one permission to start a fire at the tavern.

The owner's daughter testified that she saw defendant, Chaney, and Kean in defendant's car at the fire. Mrs. Violet Stevens, wife of the tavern owner, testified that several months after the fire, defendant admitted to her that he and Chaney had started the fire and apologized for doing so. Mrs. Stevens, however, did not report the statement until a few days prior to trial, over a year later.

Defendant attempted, through his own testimony and that of one witness, to establish an alibi for the evening. Defense evidence showed that defendant spent the evening at his home with Reba Stevens, Delmar Harris, and Matt Turner. Twice during the evening, Chaney and Kean, both of whom had been drinking, left in defendant's car. Defendant testified that when the fire alarm sounded, he walked from his home to the tavern and found Chaney, Kean and his car. He stayed at the fire for a short while and then drove home after dropping Chaney off. Reba Stevens corroborated defendant's story about being at home, but neither Harris nor Turner could reconstruct their movements.

Sid Rice was the final witness for the defense. He stated that he talked to Chaney the day after the fire and that Chaney admitted having set it. He also stated that the conversation took place after 4:30 p.m. because that was the time he finished work. On cross-examination, Rice identified his time-card from his place of employment for the period indicating that he did not work the day after the fire.

■■ Defendant first contends that he was not proven guilty beyond a reasonable doubt. Of course, no discussion of the sufficiency of the evidence would be complete without a determination of the propriety of the use of Chaney's prior inconsistent statements during the State's case. This will be discussed in detail below. We believe, however, that sufficient evidence was presented without these statements to uphold the conviction.

Before Chaney was declared a hostile witness, he testified that he and the defendant started the fire, regardless of who had poured the gasoline and who had struck the match. Defendant's presence at the scene when the fire started was established by Chaney and Kean. Three witnesses saw defendant's car leave the tavern after the fire started. A police officer saw defendant in his car near the tavern three times during

the evening. All of this evidence contradicted defendant's alibi evidence. The wife of the tavern owner testified that defendant admitted having started the fire. All of the State's witnesses were competently and aggressively cross-examined and several inconsistencies were brought to light. Counsel properly and adequately informed the jury of the weaknesses of the State's case. It is the duty and function of the jury to hear the evidence, view the witnesses and judge their credibility and to weigh the evidence as it sees fit. The jury's verdict will not be overturned unless it appears that the verdict is so palpably contrary to the evidence or the evidence is so unsatisfactory as to leave a reasonable doubt of defendant's guilt. (*People v. Crews*, 38 Ill.2d 331, 231 N.E.2d 451 (1967); *People v. Clark*, 52 Ill.2d 374, 288 N.E.2d 363 (1972).) We do not believe that the jury's verdict was unsupported by .the evidence. Nor is the jury under any obligation to believe a defendant's alibi evidence. *People v. Clark*, 52 Ill.2d 374 (1972).

■■ Defendant places great emphasis on the unreliability and suspect nature of accomplice testimony, particularly where the coparticipant testifies under a grant of immunity. There can be no doubt that defendant correctly states the law. (*People v. Zaransky*, 362 Ill. 76, 199 N.E. 104 (1935); *People v. Butler*, 23 Ill.App.3d 108, 318 N.E.2d 680 (1974).) But in the instant case, where a cautionary instruction was tendered by the defendant and given to the jury and where defendant's counsel so forcefully argued that Chaney's testimony should be scrutinized with suspicion, we do not believe that the record reflects that the jury afforded his testimony more weight than it was entitled under the law.

Defendant next contends that the court erred in allowing the State to examine Chaney as a hostile witness and use prior statements to refresh his memory. When Chaney first took the stand, he testified to the operative facts that he and defendant had started a fire at the tavern on the evening alleged in the indictment. It was only after Chaney balked at remembering details of the evening that the State asked that he be declared hostile. After the court granted the motion, the State's Attorney led Chaney question by question through the brief statements made previously by Chaney concerning details of the incident. Chaney acknowledged that he had made all the statements read by the State's Attorney. On cross-examination, Chaney admitted that he could not remember exactly where he had made the statements or who had been present. He also stated that he had not been advised of his right to remain silent or his right to the presence of an attorney and that the statements were unsworn and unsigned. Defense counsel pointed out to the jury by his questioning of Chaney that the State had given Chaney

full immunity from prosecution for his part in the offense, and although Chaney admitted that he had made the statements alluded to, he contended that he had little present recollection of the incidents and appeared confused when closely questioned about his movements that night. On re-direct, Chaney stated that he had been advised of his rights and that his memory was better when he made the statements than at trial. He recanted some of the answers given on cross-examination and returned more closely to the prior statements.

■■ The sole purpose of the State's request to be allowed to cross-examine Chaney on the prior statements was either to refresh the recollection of a forgetful witness or to urge truthful testimony from a reluctant witness. Chaney did not deny making any of the prior statements. Nor did the prior statements contradict his previous trial testimony. Thus we are not faced with the problems inherent in the State attempting to introduce substantive evidence by the use of extra-judicial, unsworn statements under the guise of impeaching an eyewitness who attempts at trial to exonerate a defendant or to offer no evidence for the prosecution. See *People v. Paradise,* 30 Ill.2d 381, 196 N.E.2d 689 (1964); *People v. Collins,* 49 Ill.2d 179, 274 N.E.2d 77 (1971); *People v. Gant,* 58 Ill.2d 178, 317 N.E.2d 564 (1974); *People v. Bailey,* 60 Ill.2d 37, 322 N.E.2d 804 (1975). See also discussion of cases, *People v. Bailey,* 60 Ill.2d 37, 49-59 (Underwood, C. J., and Ryan, J., dissenting).

■■ The practice of a court declaring a witness to be "hostile" or "adverse" or "a court's witness" has received extensive treatment from Illinois courts. As most often stated:

> A witness may be made a court's witness and subjected to cross-examination by either side where, for sufficient reason shown, his integrity or veracity is doubtful and neither side desires to vouch for his testimony. The purpose of the rule is to prevent a miscarriage of justice by having an eyewitness to the crime fail to testify, but the cross-examination should be strictly restricted to the direct issues and not permitted on collateral matters. (Citations omitted.) (*People v. McKee,* 39 Ill.2d 265, 270, 235 N.E.2d 625, 628 (1968).)

Thus, while the use of cross-examination of court's witnesses is both proper and necessary under certain circumstances, it must be viewed with suspicion and be properly circumscribed. In the instant case, as noted above, the cross-examination was not designed to impeach the witness but rather to elicit from him the information previously given. The prosecution asked after each question if Chaney had made the statements alluded to and Chaney responded that he had, thereby accepting the testimony as his own. The parts of the statement used and

acknowledged by Chaney to be his own related to the movements of Chaney and the defendant behind and around the tavern on the night of the fire. The evidence established that defendant removed a jug of gasoline from the trunk of his car and poured it on the back of the tavern. After Chaney failed to light the flame, defendant lit a match and set the blaze. At this point Chaney admitted that the prior statement was true, thus adopting it as his present testimony. He then testified, from present recollection, of the movements of Chaney, defendant, and Kean before and after the fire. Chaney was asked if defendant later told him why the fire was set and Chaney responded in the negative. The prosecutor, again over objection, referred to the prior statement, again acknowledged by Chaney, to show that defendant had been "barred" from the tavern by the owner after some unspecified disagreement.

We believe that there were sufficient grounds for the court to determine that the State was truly and genuinely surprised by the sudden lack of memory of the witness Chaney which would work the kind of "miscarriage of justice" referred to in *McKee* if allowed to stand. The questioning of Chaney about the prior statement was properly limited to direct and operative facts about the incident and defendant's motive for committing the offense.

■■ Defendant argues that the jury was not adequately instructed on the limited purpose of the cross-examination of Chaney. We note first that only one defense instruction was given. That instruction, actually tendered by the State but marked as a defendant's instruction at the urging of the court, admonished the jury of the suspicious nature of accomplice testimony. It is well settled that a party may not claim on appeal that error was committed in failing to instruct the jury where the party seeking such instruction failed to tender it at trial. (*People v. Walls*, 33 Ill.2d 394, 211 N.E.2d 699 (1965); *People v. Holt*, 7 Ill.App.3d 646, 288 N.E.2d 245 (1972).) Further, as noted above, the cross-examination of Chaney was not for the purpose of impeachment. To have given a limiting instruction on that point would have misled the jury as to the weight to be given Chaney's testimony. We find no reversible error in the examination of Chaney or the jury's evaluation of his testimony.

Defendant next contends that the court erred in allowing the prosecution to inquire of the defendant during cross-examination whether statements made by several State witnesses were incorrect. The questions involved statements made by the tavern owner about ownership of the tavern and statements by several witnesses who saw him the evening of the fire, including Chaney and Kean. During this line of

questioning, defense counsel objected on the grounds that the questioning exceeded the scope of direct examination; the objection was overruled.

██ Defendant argues that this series of questions enabled the State to "repeat and emphasize" previous prosecution testimony, forced the defendant to judge the veracity of State witnesses, and was intended to discredit the defendant in the eyes of the jury. Defendant places improper reliance, however, upon *Ryan v. Monson*, 33 Ill.App.2d 406, 179 N.E.2d 449 (1961), and *Teece v. Bieber*, 323 Ill.App. 647, 56 N.E.2d 665 (1944). In both of those cases, error was found in cross-examination which forced the defendant to judge whether testimony of prior witnesses was "true" or "false." In *Ryan* the court specifically noted that such characterization fails to include the possibility of mistake on the part of the witness. In the instant case, each question asked only if the witness was "wrong" or "mistaken." Thus, we do not believe that defendant was forced to judge the truthfulness of the witnesses. The purpose of the questions was to attack the defendant's purported alibi by examining the defendant on each substantive piece of evidence contradicting the alibi. As such, defendant's credibility was certainly in question, this being the sole purpose of the cross-examination. We find no impropriety in the State's cross-examination of the defendant.

 Defendant next contends that the court erred in allowing the State's Attorney to read from a statement taken from a defense witness during the State's closing argument to the jury. Testifying for the defense, Reba Stevens stated that when she arrived at defendant's home Matt Turner and Delmar Harris were present. She also testified that she remained with them until after the fire alarm had sounded and then left. At that time defendant was still present. On cross-examination, the State's Attorney questioned the witness about a prior statement she had made in which she stated that after she arrived at defendant's home, Matt Turner, Chaney, and one Paul Meyers arrived. She admitted making the statement but said she had been confused and that Delmar Harris and not Paul Meyers was the person involved. The statement also reflected that she had left between 10 and 10:30 p.m. and not after midnight as she had testified on direct examination. She again admitted having made the statement but testified that she was confused about the time. There was further indication from the statement that she had been intoxicated on the evening of the fire but she denied this on direct and cross-examination. During closing argument, the State's Attorney first referred to her testimony that she had been with defendant, Matt Turner and Delmar Harris until after the fire alarm sounded. Then, over strenuous objection from the defense, the prosecutor, apparently reading

from the statement with which he had attempted to impeach Reba Stevens, stated:

> "When I got there, the only people present were Frank Morse and some boys playing pool. When I got there within five or ten minutes after I got there, Paul Meyer, Matt Turner and Charlie Chaney came."

The prosecutor then pointed out the discrepancy whether Paul Meyers or Delmar Harris was present. He continued:

> "She goes ahead and she says, 'They sent Charlie after some booz [sic]. He came back; they drank the booz [sic].' She says nothing more about Charlie. She says, 'About ten or ten thirty.' She says, 'Around ten or ten thirty' under oath. 'I left and went to Leander Thorpe's and went to bed. I know nothing that happened the rest of the evening.'"

The prosecutor then commented on the time discrepancy between the statement and her testimony and similar statements in defendant's testimony. Both of the statements quoted above were used by the State in its cross-examination of Reba Stevens and thus were already before the jury. The rule was apparently first developed in *People v. Willy*, 301 Ill. 307, 133 N.E. 859 (1921), that attorneys should not read from the transcript or personal notes or memoranda of testimony during the trial during closing argument. The purpose of the rule is to prevent undue emphasis from being placed upon any part of the testimony. It should be noted, however, that the court in *Willy* did not reach the question whether this error alone is sufficient to reverse, the case being otherwise replete with error. Defendant also cites *People v. Smith*, 105 Ill.App.2d 8, 11, 245 N.E.2d 23 (1969), and *People v. Hoggs*, 17 Ill.App.3d 67, 307 N.E.2d 800 (1974). In *Smith*, the prosecutor read "a transcript of the defendant's testimony concerning his alibi witnesses." The court commented on this error in one phrase but dwelt heavily upon a more egregious error by the State, remarks made to the jury that defendant had not produced the witnesses alleged to support the alibi defense when it knew that six of the witnesses could not be found. In addition the court found other trial errors requiring reversal. In *Hoggs*, the prosecutor employed either the transcript or personal notes of the testimony to intersperse his argument with questions and answers, purportedly from testimony. In addition, the prosecutor misrepresented the testimony in significant places. The court noted that reading from the transcript of trial is improper but that paraphrase is acceptable. The court, however, considered the closing argument as a whole, including the misrepresentations, and found no prejudice to the defendant. The conviction was reversed on other grounds.

In the instant case, the closing arguments of both parties consumed almost 50 pages of the record and were less than artfully made. Both arguments were interrupted frequently by objections, many of which were sustained and even more overruled. We cannot say that the brief reference to the statement taken from Reba Stevens, although perhaps improper, prejudiced the defendant in any way. Defendant also complains of reference by the State in closing argument to Chaney's prior statement that defendant had previously been "barred" from the tavern. Defendant contends that this was evidence employed solely for impeachment purposes and that the State implied to the jury that it had substantive weight. As noted above, however, we believe that Chaney's statement was not used to impeach Chaney and comment upon it in closing argument was proper.

■■ Defendant finally argues that the sentence of from 5 to 20 years is excessive. The presentence report in this case indicates a long history of antisocial conduct and criminal behavior. As correctly noted by defendant, the report reflects several arrests not reduced to conviction which should not have been considered alone in imposing sentence. The report also included statements from several citizens of their fear of the defendant and his penchant for violence. It is the duty of the court to review the defendant's background, particularly where a sentence greater than the minimum is imposed. (*People v. Coultas,* 30 Ill. App.3d 81, 332 N.E.2d 169 (1975).) In its comments at sentencing, the trial judge discussed defendant's background, both social and criminal, but mentioned specifically only the two relatively minor charges for which defendant was convicted. Although we believe that the court was justified in imposing a sentence greater than the minimum available, we do not believe that the sentence of from 5 to 20 years is required for the protection of society. Accordingly, we reduce the minimum sentence to three years and the maximum to nine years.

The judgment of the Circuit Court of Massac County is affirmed as modified.

Affirmed as modified.

EBERSPACHER and G. MORAN, JJ., concur.