THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
JAMES DAVIES *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 76-527

Opinion filed June 21, 1977.

James Doherty, Public Defender, of Chicago (Frances Sowa and Donald S. Honchell, Assistant Public Defenders, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Iris E. Sholder, and Edward D. Stern, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Defendants, James Davies and Howard Ballard, were charged by indictment with the offenses of attempt armed robbery, attempt murder and aggravated battery in connection with the holdup of the Key Club Lounge and the shooting of its proprietor, Frank Luckett, and a patron, Roger Hicks. (Ill. Rev. Stat. 1973, ch. 38, pars. 8—4, 9—1, 12—4, 18—2.) Upon a jury trial, defendants were found to be guilty of the attempted armed robbery, attempted murder and aggravated battery of Frank Luckett. Judgment was entered on the verdicts with respect to the offenses of attempt murder and attempt armed robbery. Defendants were sentenced to serve concurrent terms of confinement in the Illinois State Penitentiary of 6-18 years for each offense.

From entry of the judgment of conviction defendants appeal contending (1) that the trial court committed prejudicial error in its instructions to the jury; (2) that certain conduct of the prosecution in presenting its case to the jury was improper and served to deny defendants a fair trial; and (3) that the sentences as imposed were improper.

A review of the evidence adduced at trial reveals that at midnight on October 1, 1973, Frank Luckett was tending bar in the Key Club Lounge located at 3543 West Cermak Avenue in Chicago, Illinois. Among those patrons frequenting the lounge on this occasion were Keith Godbold and Roger Hicks. The establishment was illuminated by several electric lights of varying intensities and Luckett characterized the lighting conditions as "good."

Shortly after midnight, an individual identified as James Davies, entered the lounge, approached the bar, purchased a bag of popcorn

from Luckett and left the lounge. Luckett indicated that Davies was in the lounge for a period of approximately two minutes on this occasion and that Luckett enjoyed a "good" opportunity to observe Davies' features from close proximity.

According to Luckett, approximately 15 minutes later, Davies returned in the company of two individuals, subsequently identified as defendant Howard Ballard and one Earl Hunter. Davies positioned himself near the entrance to the lounge, 10-12 feet from Luckett. Ballard and Hunter slowly walked to the rear of the lounge and stopped approximately 4 feet from the bar.

Luckett testified that Davies drew a weapon and announced, "This is a hold-up." Luckett, who had previously armed himself in anticipation of a potential robbery, fired toward Davies. Davies and Ballard returned fire. Luckett was wounded in the wrist, leg, neck and back. Hunter and a patron, Roger Hicks, were also struck by gunfire.

Responding to a radio call regarding a shooting at 3543 West Cermak Avenue, Chicago Police Department Officers Timothy Goc and Steven Scholl arrived at the scene and interviewed Keith Godbold. According to Officer Scholl, Godbold described one of the assailants as a male Negro, approximately five feet eight inches in height, weighing approximately 165 pounds and wearing a black hat, brown coat and black trousers. Godbold also provided Scholl with general descriptions of the other assailants, indicating that they approximated 5 feet 10 inches in height and weighed approximately 150 pounds. No clothing description was provided as to the latter individuals.

The officers, in civilian dress, toured the area in an unmarked police vehicle and, approximately two blocks from the lounge and within five minutes of their arrival at the scene, observed a male Negro who appeared to be approximately five feet eight inches in height, weighing approximately 165 pounds and wearing a black hat, brown coat and black pants. Scholl identified this individual as Howard Ballard. Ballard was observed standing near a telephone booth eating a piece of chicken. Entering the telephone booth was an individual matching the general description provided by Godbold and subsequently identified as James Davies. Scholl indicated that he did not observe either of the subjects in possession of a package.

Defendants were transported by the officers to the Key Club Lounge. Officer Scholl indicated that upon their arrival Keith Godbold observed defendants as they were seated in the police vehicle and identified them as the perpetrators of the abortive armed robbery.

Defendants were subsequently transported to hospital facilities where Luckett was receiving emergency medical attention. Scholl described

Luckett as being awake, alert and attentive. Luckett identified defendants as two of the assailants.

Luckett further testified that during the summer or fall of 1974 following his release from the hospital, Ballard returned to the Key Club Lounge and said, "I'm clean. I don't have anything. I didn't shoot you." Ballard then proposed, "I'll tell you what I'll do if you don't go to court. I'll give you two thousand dollars." Luckett ordered Ballard to leave and not return. Ballard complied.

The State also presented the testimony of Keith Godbold who indicated that on the occasion in question he observed Ballard and an unidentified female enter the lounge and walk toward the rear of the bar. Approximately 20 seconds later, Godbold observed another male, identified as James Davies, enter the lounge. According to Godbold, Davies spoke "incoherently" and fired a weapon. Additional shots were fired and Godbold sought cover. He subsequently observed both Davies and Ballard flee the lounge. Godbold indicated that he informed investigating officers of these observations.

Roger Hicks testified that on the occasion in question he was wounded by gunfire. Hicks indicated that his left eye had been removed prior to the incident and that he wore a corrective lens to aid his remaining eyesight which was characterized as "not too good." Hicks testified that he did not observe Ballard or Davies in the lounge during the shooting.

At the close of the State's case-in-chief the trial court granted defense motions for directed verdicts of not guilty relative to the charges that defendants attempted to rob Hicks at gunpoint. Similar motions with respect to the remaining charges were denied.

Defendant Davies testified in his own behalf and denied his alleged participation in the robbery of the lounge and the shootings which occurred therein. Davies testified that he left his home in the company of Howard Ballard at approximately 12:30 a.m. on the date in question for the purpose of purchasing a quantity of barbecued chicken for himself, his mother and Ballard. Davies indicated that they walked to a restaurant approximately five blocks from his home; that he and Ballard remained in the restaurant 10 or 15 minutes; that they effected their purchase and began to walk home. Davies further indicated that at this time Ballard was carrying a package of chicken but denied that he had been stopped by police officers in the vicinity of a telephone booth. Davies stated that upon being transported to the lounge by the arresting officers, he did not observe Keith Godbold.

Defendant Ballard also testified in his own behalf and denied his alleged complicity in the offenses charged against him. He, too, indicated that he left the Davies' home at approximately 12:30 a.m. on the date in

question in order to purchase some chicken. He testified that he was stopped by uniformed policemen driving a marked police vehicle but denied that he was approached in the vicinity of a telephone booth. Ballard indicated that at the time of his arrest he was wearing a black velvet cap, a maroon shirt, a beige and brown jacket, black trousers and red, green and brown suede shoes.

Ballard admitted that he spoke to Luckett subsequent to the incident in question but denied that he attempted to bribe Luckett to refrain from testifying.

Defendants also adduced the testimony of Mary Davies. She testified that her son, James, left her home at 12:30 a.m. on October 1, 1973, in the company of Howard Ballard in order to purchase some chicken.

Chicago Police Investigator Raymond Soltys, testifying for the defense, indicated that he had occasion to interview Frank Luckett after the latter had identified defendants at hospital facilities. According to Soltys, Luckett informed him that four male offenders had entered the lounge brandishing weapons. One of the two individuals Luckett had just identified, specifically, the assailant wearing a red shirt, announced the holdup. Soltys also testified that Luckett had informed him that he was familiar with defendants prior to the incident and that on the evening of the robbery attempt, two individuals, including James Davies, entered the lounge and purchased a bag of popcorn.

Defendants initially contend that the trial court committed prejudicial error in its instructions to the jury. Specifically, defendants assert that the instructions erroneously permitted the jury to find defendants guilty of the attempted murder of Frank Luckett without a finding of specific intent to kill or do great bodily harm to that individual. The instructions given to the jury included the following:

"To sustain the charge of attempt, the State must prove the following propositions:

*First*: That the defendant performed an act which constituted a substantial step toward the commission of the crime of Murder on Frank Luckett; and

*Second*: That the defendant did so with intent to commit the crime of murder.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty." IPI Criminal No. 6.07.

The jury was also instructed, over defense objection, that:

"A person commits the crime of murder who kills an individual if, in performing the acts which cause the death,

he intends to kill or do great bodily harm to that individual; or

he knows that such acts will cause death to that individual; or

he knows that such acts create a strong probability of death or great bodily harm to that individual; or

*he is attempting to commit or is committing the crime of armed robbery.*" (Emphasis added.) IPI Criminal No. 7.01.

Defendants argue that such instructions permitted the jury to find defendants guilty of the attempted murder of Frank Luckett if the jury found that defendants were committing the forcible felony of armed robbery.

The Illinois Supreme Court recently considered a somewhat similar contention in *People v. Viser* (1975), 62 Ill. 2d 568, 343 N.E.2d 903.

In *Viser*, the defendants were charged with the attempted murder of one Harold Smith. The jury was instructed in language essentially similar to that employed in the case at bar that a person commits the crime of murder, who, in the alternative, is attempting to commit the crime of aggravated battery. The supreme court held that the instruction was fatally defective because it permitted the jury to find the defendant guilty of attempting to murder Harold Smith if they believed the defendant guilty of committing the forcible felony of aggravated battery. The court noted that the unique characteristic of felony murder is that it does not include an intent to take life. Therefore, it was error to instruct the jury that the defendant might be found guilty of attempted murder in the absence of such an intent. *People v. Viser* (1975), 62 Ill. 2d 568, 581-82, 343 N.E.2d 903, 911.

In the instant case, the State concedes that the jury was erroneously instructed regarding the effect to be given a finding that defendants committed a forcible felony. However, the State contends that defendants suffered no prejudice as the objectionable instruction was not relied upon by the jury when they found defendants guilty of attempting to murder Frank Luckett. In support of this position, the State notes that defendants were charged with the attempted murder of both Roger Hicks and Frank Luckett; that had the jury relied on a finding that defendants were committing the forcible felony of armed robbery in order to sustain their finding that defendants attempted to murder Frank Luckett, defendants would have been convicted of attempting to murder *both* Luckett and Hicks; hence, since the jury acquitted defendants of the attempted murder of Hicks, that jury must have concluded that defendants specifically intended to take Luckett's life. However, this analysis overlooks the fact that the trial court directed the jury to find defendants not guilty of the attempted armed robbery of Roger Hicks.

Consequently, the fact that the jury obeyed the trial court's directive in this regard does not serve to diminish the likelihood that their decision to convict defendants of the attempted murder of Luckett was reached without a finding that defendants intended to take his life.

Under the circumstances, we believe that the jury was misled by an inaccurate statement of the law and that this error requires reversal of defendants' convictions for the attempted murder of Frank Luckett and remandment of the cause for new trial on this charge. *People v. Viser.*

Defendants also contend that certain conduct of the prosecution in presenting its case to the jury was improper and served to deny defendants a fair trial.

Within this context, defendants initially assert that the trial court erred in permitting the use of a witness' pretrial testimony in conjunction with the State's cross-examination of defendant Ballard.

On direct examination, defendant Ballard testified as follows:

"Q: Did you hear Godbold at any time that he was in court here tell anybody that he had seen you before?

A: No sir."

On cross-examination, defendant was asked if Godbold, at a pretrial hearing, had not identified defendant as the individual Godbold had seen in a police vehicle parked before the Key Club Lounge on October 1, 1973. Ballard responded, "Maybe."

The prosecutor then asked Ballard if he was present on the occasion of the pretrial hearing when Godbold was asked and answered certain questions. The questions and answers, which were read to Ballard, indicated that Godbold identified the defendants at the pretrial hearing as the same men he had seen in the police vehicle. Ballard responded, when questioned as to whether such a colloquy transpired, "Maybe he did."

Defendants currently contend that the trial court erred in permitting Godbold's pretrial testimony to be used as a means of testing Ballard's ability to recall, apparently on the grounds that such testimony constituted hearsay.

■■ We note that defendants did not make a timely objection to the reading of Godbold's testimony on this ground before the trial court. Nor is this matter assigned as error within the context of defendants' written post-trial motion for new trial. As such the issue has not been properly preserved for appellate review. *People v. Long* (1968), 39 Ill. 2d 40, 233 N.E.2d 389; *People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856. In any case, the testimony in question was not offered in order to prove the truth of the matters asserted therein (*i.e.*, that defendants were, indeed, the same individuals that Godbold had observed in the police vehicle on October 1, 1973). The testimony was offered solely to dispel the impression that Godbold had not previously, while Ballard and Davies

were present in court, identified Ballard as one of the assailants. Such testimony was properly employed in order to test defendant Ballard's credibility in terms of his ability to recall. In this context, Godbold's pretrial testimony may not be characterized as hearsay and declared inadmissible on that ground. (*People v. Carpenter* (1963), 28 Ill. 2d 116, 190 N.E.2d 738.) The defendant cannot hope to create an erroneous impression or a half-story without opening the door to a fuller explanation by the State on cross-examination. The inquiry in the case at bar served a legitimate purpose of cross-examination. See *People v. Carbona* (1975), 27 Ill. App. 3d 988, 327 N.E.2d 546; *People v. Morse* (1975), 33 Ill. App. 3d 384, 342 N.E.2d 307.

Defendants also argue that they were deprived of a fair trial by the prosecutor's conduct during closing argument. Specifically, defendants contend that the closing argument was improper since counsel: (1) read from the trial transcript; and (2) made a misstatement of fact.

■■ Defendants maintain that to permit the prosecution to read from the trial transcript is improper inasmuch as the technique serves to unduly emphasize certain selected portions of the evidence. *People v. Willy* (1921), 301 Ill. 307, 133 N.E. 859; *People v. Smith* (1969), 105 Ill. App. 2d 8, 245 N.E.2d 23; *People v. Hoggs* (1974), 17 Ill. App. 3d 67, 307 N.E.2d 800.

This *per se* rule has been subjected to obvious criticism and its continued vitality in light of *People v. Pierce* (1974), 56 Ill. 2d 361, 308 N.E.2d 577, must be examined. The supreme court in *Pierce* held that it was within the discretion of the trial court whether to read portions of the trial transcript back to the jury at its request. The court noted:

"In the absence of a governing statute there are differing views on whether a trial judge upon a jury's request during its deliberations should permit a review of testimony that was presented during trial. Some have taken the position that where the requested testimony is directly material to the issues in the case the trial court must grant the jury's request. (*E.g., United States v. Jackson* (3d Cir.), 257 F.2d 41.) The view taken in the ABA Standards, Trial by Jury, section 5.2 (Approved Draft, 1968), is that the trial court is obliged to have the testimony read to the jury whenever the jury's request is reasonable, the determination of which, of course, involves an exercise of discretion. A third view is that it is within the discretion of the trial court to allow or refuse the request for the review of testimony. The majority of courts which have considered the question have adopted this view. (50 A.L.R.2d 176.) We consider that the position of the majority is to be preferred. The trial court will have a full knowledge of the case. It will know the charges against the accused, the witnesses and the

supporting or defeating testimony and other evidence which may have been presented. It will be in a position to assess the request and judge whether a review of testimony, considering the circumstances, will be helpful or hurtful to the jury's proper deliberations. This question of review, like so many others which appear in the course of trial, is best entrusted to the trial court's sound discretion." (56 Ill. 2d 361, 363-64, 308 N.E.2d 577, 578.) The concern for undue emphasis must, perforce, be lessened where the reading occurs within the context of closing argument, a primary purpose of which is to review all the evidence for the jury. (See *United States v. Kuta* (7th Cir. 1975), 518 F.2d 947, and cases cited therein.) Without question, counsel might choose to summarize a particular phase of a witness' testimony and dwell upon such testimony at length in counsel's closing argument. The prohibition enunciated in *Willy* does not extend to a paraphrased recapitulation of testimony where the prosecutor has merely refreshed his recollection from his own minutes. (*People v. Birger* (1928), 329 Ill. 352, 160 N.E. 564.) Under such circumstances, a premium is placed upon counsel's memory while penalizing accuracy and without necessarily reducing the emphasis placed upon such testimony. Consistent with the rationale of *Pierce*, we feel that it is within the sound discretion of the trial court to permit counsel to read from the trial transcript during closing argument.

In the instant case, the argument of counsel for the defense and the State consumed 75 pages. The trial transcript excerpts read were relatively brief and accurately quoted. The readings were not so extensive as to unduly emphasize the testimony at issue so as to operate to defendants' prejudice and no abuse of discretion has been demonstrated. *People v. Morse* (1975), 33 Ill. App. 3d 384, 342 N.E.2d 308.

■■ Defendants also assert that a remark of the prosecution in closing argument, which remark was based upon facts not in evidence, operated to defendants' substantial prejudice.

During closing argument, the prosecution read a portion of Keith Godbold's pretrial testimony, in which he was asked by defense counsel whether he heard one of the men in the police vehicle say, "Tell them I was not involved in this * * *." The question put by defense counsel on this occasion was not introduced into evidence at trial. The prosecution argued to the jury that defense counsel's question indicated that defendants knew that they were being identified as they sat in the police vehicle. This was impeaching of defendants' testimony that they did not see Godbold identify them on that occasion.

The State concedes that the remark was improper but urges that the comment did not constitute a material factor in defendants' convictions. It is well settled that improper remarks will not constitute reversible error

unless substantial prejudice results. *People v. Duckett* (1974), 56 Ill. 2d 432, 308 N.E.3d 590.

The prosecutor's comment in no way serves to diminish the positive, consistent and credible eyewitness testimony presented by the State. Such inconsistencies as may be suggested as resulting from variations between the witness' pretrial and trial testimony are minor and do not detract from the credibility of the eyewitness identifications provided by Luckett and Godbold. We believe that the error complained of in this regard was not of such magnitude that it constituted a material factor in defendants' convictions. Given the strength of the State's case it cannot be said that the decision of the trier of fact would have been different had all of the remarks complained of remained unsaid. *People v. Nicholls* (1969), 42 Ill. 2d 91, 245 N.E.2d 771.

Defendants finally contend that their convictions for the offenses of attempt armed robbery must be reversed as the acts which constituted the attempted robbery were part of the same transaction giving rise to their convictions for attempt murder. Defendants also contend that their convictions for the offense of aggravated battery must be vacated as these convictions were also based upon the same facts which supported defendants' convictions for the offense of attempt murder.

■■ The State responds that defendants' separate convictions for the offenses of attempt murder and attempt armed robbery are proper on the grounds that the crime of attempted murder was committed in order to avoid injury and apprehension and not solely for the purpose of effectuating an armed robbery. The State concurs that separate convictions for attempt murder and aggravated battery may not lie; however, the State maintains that the trial court vacated defendant's convictions for aggravated battery at the time of sentencing. We have examined the record and, while the trial court's syntax might have been phrased more clearly, we believe that the court did, indeed, vacate defendants' convictions for the offense of aggravated battery. No sentence was imposed on that count.

We note that in the recent opinion of the Illinois Supreme Court in *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 845, it was held "that when more than one offense arises from a series of incidental or closely related acts and the offenses are not, by definition, lesser included offenses, convictions with concurrent sentences can be entered." (66 Ill. 2d 551, 566.) The so-called independent motivation test has been rejected.

In the instant case, the offenses of aggravated battery, attempt armed robbery may be said to arise from a series of closely related acts and are not lesser included offenses. Consequently, convictions for aggravated battery and attempt armed robbery may properly be entered.

For the aforementioned reasons, defendants' convictions for the

offense of attempt armed robbery are affirmed; defendants' convictions for the offense of attempt murder are reversed, and the cause is remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed in part; and remanded with directions.

DOWNING, P. J., and PERLIN, J., concur.