THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LARRY P. CRAMER, Defendant-Appellant.

Fourth District   No. 14061

Opinion filed October 12, 1978.

Larry P. Cramer, of Sidell, *pro se*, and Donald M. Tennant, of Champaign, for appellant.

William J. Scott, Attorney General, of Chicago, and Thomas J. Difanis, State's Attorney, of Urbana (Donald B. Mackay, Raymond J. McKoski, and Thomas W. Connors, Assistant Attorneys General, of counsel), for the People.

Mr. JUSTICE TRAPP delivered the opinion of the court:

Defendant appeals his convictions of conspiracy to commit murder (three counts), and solicitation to commit murder (six counts), entered upon jury verdicts.

Defendant's post-trial motion alleged some 70 errors, most of which are argued in defendant's brief. Upon *pro se* oral argument it is contended that the cause should be reversed for accumulated error and the argument was directed to the several errors discussed severally hereafter.

The sum of the allegations of the indictment is that between February 1974 and December 13, 1974, defendant conspired with a client, Weathington, to murder defendant's wife and that within such period defendant agreed and requested and encouraged Weathington to commit murder. (Ill. Rev. Stat. 1973, ch. 38, pars. 8—1 and 8—2.) On November 18, 1974, Weathington advised both the police and the State's Attorney of the schemes which are the subject of the prosecution and cooperated with them in the recording of certain conversations between the conspirators. He testified in behalf of the prosecution, both before the grand jury and at trial. Defendant's wife testified in behalf of the defendant. Defendant did not testify.

The trial court instructed the jury upon the issues of conspiracy in the language of IPI Criminal No. 6.04. The operative words considered here are, "Third. That an act in furtherance of the agreement was performed by any party to the agreement."

Defendant objected to the giving of the instruction for the reason that it failed to set forth the specific acts alleged in the indictment, and that it failed to require that one or more of the overt acts so alleged be proven beyond a reasonable doubt. The testimony includes and concerns acts of defendant and Weathington, any one of which may be deemed overt acts in furtherance of the conspiracy but which are not actually charged or alleged in the indictment.

The defendant also tendered an instruction which modified IPI Criminal No. 6.04, by stating in such third paragraph the overt acts which the indictment alleged were performed by defendant. The indictment did not allege any overt acts performed alone by the co-conspirator, Weathington. Defendant's tendered instruction was refused.

Section 8—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 8—2) defines the elements of conspiracy. That definition concludes with the sentence:

> "No person may be convicted of conspiracy to commit an offense unless an act in furtherance of such agreement is *alleged* and proved to have been committed by him or by a co-conspirator."
> (Emphasis supplied.)

During the period when the co-conspirator, Weathington, was cooperating with the police, certain telephone conversations of the alleged conspirators were recorded. The recordings were played before the jury during the course of the trial.

Shortly after retiring the jury requested a transcript of the several

recordings. The trial judge concluded that such transcripts were not offered into evidence and could not be sent to the jury. The jury then requested that the tapes and a machine to play them be provided. The request was denied because of the judge's concern that the tape recordings might be damaged or erased.

After the jury had deliberated some 20 hours, the trial judge and counsel conferred on the record. At that time the judge stated that he would ask whether or not the jury was making progress, saying:

"I propose to take the jury into the courtroom and inquire if they are making progress and if he says no, the foreman, and I propose to inquire of the foreman if playing the tapes would be helpful in arriving at a verdict. If he says yes, I then propose to ask each of the jurors as well. If each member of the jury says yes, I'm going to play the tapes for them *in camera* in the courtroom with only the defendant, his attorney, attorney for the people and the court being present."

Defendant's counsel objected to the playing of the tapes at such time after the prior jury request had been refused, asserting such to be an abuse of discretion and argued that playing the recording at that time would be a prejudicial emphasis upon the testimony. He also asked that certain defense cross-examination and evidence be reread to the jury. The court advised that he would not allow such defense testimony to be reviewed unless the jury asked for it.

The jury was returned to the courtroom and, upon inquiry, the foreman advised that he was of the opinion that the jury *was* progressing in its deliberations. The judge then asked:

"Would it help, in your opinion, in this case if you were to hear the tapes played here in the courtroom?"

The foreman responded affirmatively as did each juror upon individual inquiry. The recordings were again played and the defendant's objections, together with a motion for a mistrial, were denied. The jury returned a verdict within 45 minutes. The issue is preserved in the post-trial motion.

The prosecution argues that there was a proper exercise of discretion in suggesting the replay of the recording because the previous denial may have discouraged renewal of the request although the jury may have continued to be uncertain or confused.

Certain other issues preserved in the post-trial motion and briefed and argued on appeal are noted.

Defendant argues that the issues instruction, IPI Criminal No. 6.04, was erroneous in that, while it required the prosecution to prove that the conspirators agreed to commit the crime, it did not require the State to prove that they intended to agree. The words "intended to agree" appear

to be directed to the notion that they agreed to conspire. Thus, defendant alleges that the trial court erred in denying his tendered instruction, IPI Criminal No. 6.03, modified to read, "intends to, and does agree with another." He cites P. Marcus, *Criminal Conspiracy: The State of Mind Crime,* 1976 U. Ill. L. F. 627.

We find that the study is directed toward the law required in Federal convictions. 18 U.S.L.A. §371 (1966) provides, "If two or more persons conspire * * * to commit any offense * * *." We note that the former Illinois statute (Ill. Rev. Stat. 1961, ch. 38, par. 139) defined conspiracy in the language "[i]f any two or more persons conspire or agree together * * *."

The present statute defining conspiracy uses different language. Section 8—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 8—2) provides, "A person commits conspiracy when, with intent that an offense be committed, *he* agrees with another * * *." (Emphasis supplied.)

Under the prior Illinois statute it was held that at least two parties with a common criminal intent are necessary to conspiracy, and where there are but two parties an acquittal of one required the discharge of the other. (*People v. Cohn* (1934), 358 Ill. 326, 193 N.E. 150.) It was held that more than one person must be guilty to sustain a conviction. *People v. Nathanson* (1945), 389 Ill. 311, 59 N.E.2d 677.

The present statute, however, specifically provides that these holdings are no longer effective. The present statute states in section 8—2(b) that:

> "It shall not be a defense to conspiracy that the person or persons with whom the accused is alleged to have conspired:
>
> (1) Has not been prosecuted or convicted, or
> * * *
> (4) Has been acquitted, * * *." (Ill. Rev. Stat. 1973, ch. 38, par. 8—2.)

Citing the present Illinois statute defining conspiracy, Marcus notes:

> "Traditionally, courts analyzed the state of mind of *both* conspirators (the conspiracy requirement referred to two or more conspirators) to determine if more than one defendant intended to agree. If only one of the two conspirators meant to agree, and the other 'conspirator' only feigned agreement or had actually contacted the police, the state of mind necessary for a conspiracy would not exist; at least two parties must intend to enter into the conspiratorial relationship. More recently, however, the trend has been away from requiring proof of an agreement by more than one defendant. The focus now is on the state of mind of the defendant on trial. This so-called 'unilateral approach' allows for the conviction of the defendant even if his 'co-conspirator' never

intended at any time to enter into an agreement with the defendant. Typically, the unilateral approach statutes require that a court only focus on the intent of the accused to enter an agreement. The mental state of the defendant's co-conspirator is largely irrelevant." 1976 Illinois Law Forum 627, 628.

■■ By reason of our present statute we conclude that the intent to agree which defendant argues is encompassed within the language which requires allegations and proof that defendant agreed with another to commit an offense.

■■ Defendant argues that since the prosecution introduced evidence of motive, the trial court erred in denying his tendered instruction modifying IPI Criminal No. 3.04 to include "The State is required to prove a motive for the commission of the crime charged." The prosecution did not tender IPI Criminal No. 3.04. In *People v. Enright* (1912), 256 Ill. 221, 234, 99 N.E. 936, 941, the court said that if the accused committed the act, the question whether he had a motive or what it was is immaterial. While evidence tending to show the existence or nonexistence of the motive is admissible and the People may so show, they are under no obligation to do so. The opinion continues to state:

"If the People claim that a motive existed inducing the commission of the act it must be proved, and, like any other circumstance, cannot be inferred, but as they are not required to show any motive a jury *should not be* informed that failure to show it tends to prove that the crime was not committed. ⁕ ⁕ ⁕." (Emphasis supplied.) (256 Ill. 221, 234, 99 N.E. 936, 941.)

In *People v. Manzella* (1974), 56 Ill. 2d 187, 306 N.E.2d 16, the court stated that IPI Criminal No. 3.04 is to be used where the State had not attempted to prove motive. We conclude that defendant's argument misstates the rule of *Enright* and *Manzella*.

Defendant urges that the court committed reversible error in admitting into evidence what is termed evidence of other crimes. We summarize rather than detail the substance of the matter.

Weathington testified to the circumstances initiating the solicitation and conspiracy. Defendant had represented him as a client which apparently entirely consisted of criminal matters. The witness called at defendant's office in February 1974 to request a loan of $20. Defendant asked whether there was security and Weathington stated that he had some marijuana. Defendant inquired whether it was of good quality and smoked some in a pipe. There was no objection. The testimony is that during the course of the transaction defendant inquired whether the witness would like to make some money and the latter expressed interest. Without then naming the victim defendant proposed that Weathington assist in getting rid of someone. In a series of subsequent conversations,

Weathington was told the identity of the victim and various sums to be paid to Weathington were discussed. There followed suggestions and discussions regarding a series of schemes and methods for causing the death of the victim. The last proposal was that Weathington find a "hit. man."

Weathington further testified that during later conversations he spoke to defendant regarding the then scheme of carrying out the conspiracy. At that time defendant stated that it was necessary to delay their preparations for the reason that there was some difficulty arising from his extramarital affair with the wife of a client. Defendant made objection and argued that the testimony was inadmissible, asserting prejudice. The prosecution suggested that the evidence was admissible to show motive and defendant's motions for mistrial were denied.

The prosecution failed to produce any further testimony concerning the extramarital problem which tended to establish motive. At the close of the prosecution's case, the court orally instructed the jury that "any evidence received in regards to the use of marijuana or immoral conduct was presented for the limited purpose of showing the relationship between the defendant and Mr. Weathington."

The written instructions included the language of IPI Criminal No. 1.01(6) regarding evidence admitted for a limited purpose. Defendant argues that the instruction was so delayed that the prejudice was not cured.

We agree with the trial court's conclusion that the testimony was relevant to the issues. In *People v. Manzella* (1974), 56 Ill. 2d 187, 196, 306 N.E.2d 16, 20, defendant argued prejudicial error in the admission of evidence of other assaults upon the victim. The evidence was held to be admissible, the court saying:

> "It is true, nevertheless, that evidence relevant to the main issue, and which serves to place the defendant in proximity to the time and place of the offense and which aids or establishes identity, and tends to prove design, motive, or knowledge, is admissible as an exception to the general exclusionary rule barring such evidence."

In *People v. Durso* (1968), 40 Ill. 2d 242, 239 N.E.2d 842, defendant, who was charged with murder, urged error in admitting evidence of narcotics transactions. The court stated the test for admission of evidence of other crimes was whether the evidence was so closely connected with the main issue that it tends to prove guilt of the crime charged.

The opinion in *People v. Tranowski* (1960), 20 Ill. 2d 11, 16, 169 N.E.2d 347, 349, states that other "crimes" which are wholly independent of and disconnected from the crime charged are not admissible, but continued:

> "But a corollary of the rule is that evidence, relevant to the main

issue, which serves to place a defendant in proximity to the time and place, aids or establishes identity, and tends to prove design, motive or knowledge, is admissible. [Citation.] Resolution of the conflict between the rule and the corollary depends on whether the evidence of other crimes is so closely connected with the main issue that it tends to prove the accused guilty of the crime for which he is being tried."

■■ The evidence at issue here was clearly intertwined with the negotiation and the progress of the conspiracy. It did not concern wholly independent and unrelated conduct clearly apart from the offenses charged. The transaction concerning a loan "secured" by marijuana was the point from which defendant opened discussion or suggestion of the acts constituting the objective of the conspiracy. That transaction was of a nature that might suggest to defendant that Weathington would be receptive to the proposals and did, as the trial judge concluded, explain the relationship between the parties.

The testimony concerning the extramarital affair originated in statements by defendant to Weathington explaining the cause for delay in the further discussion of the plans for carrying out the conspiracy. It was presented to the jury in the context of the course of the developing conspiracy, rather than introduced as wholly extraneous to the relation between the parties.

At the time that defendant objected to the testimony, the prosecution suggested the showing of evidence of motive. At that time the trial judge had no way of ascertaining the fact. At the close of the case in chief when all evidence regarding motive was disclosed to him he did instruct the jury of the limited purpose in the consideration of the jury.

■■ The argument that the rulings were too long delayed is not persuasive. Logically, it seems that orally instructing at the close of all prosecution evidence would more effectively impress than rulings scattered throughout the several days of testimony. We find no reversible error upon these issues.

Defendant argues that the trial court erred when it denied a motion to suppress certain electronic recordings, called "tapes," for the reason that it was not done in compliance with the then statute (Ill. Rev. Stat. 1973, ch. 38, par. 14—2(a)). That statute prohibited the use of eavesdropping devices unless such was done with the consent of one party and at the request of the State's Attorney. On four separate days telephone calls from Weathington to defendant were made from an investigating office. The recording device was attached to the telephone in that office and had no connection to defendant's telephone or its connecting lines. An assistant State's Attorney was present on each occasion.

The State's Attorney testified that he made a request for monitoring of

each call and that he had designated a named assistant to be in charge of such portion of the investigation. Each act of monitoring followed the request for that recording by the assistant State's Attorney and he was present. A fifth occasion involved the arrangement whereby Weathington wore a device which transmitted the conversation by radio and which was recorded.

The record shows no indiscriminate broad authority given to police officers to monitor defendant's conversations at their own discretion as in *People v. Porcelli* (1974), 25 Ill. App. 3d 145, 323 N.E.2d 1. In *People v. Richardson* (1975), 60 Ill. 2d 189, 328 N.E.2d 260, the Supreme Court determined that the State's Attorney had a large discretion in administering his duties in the authorization of eavesdropping activities. In *People v. Marlow* (1976), 39 Ill. App. 3d 177, 350 N.E.2d 215, the State's Attorney's request included the delegation of authority to a named assistant to authorize that it was done. The recorded evidence was held admissible. Here, as there, the assistant State's Attorney designated and specified the date and occasion for each recording. (See also *People v. Holliman* (1974), 22 Ill. App. 3d 95, 316 N.E.2d 812.) Defendant's argument that the State's Attorney gave "permission" rather than made a request is without merit.

■■ The several recordings occurred throughout a period of some three weeks. Defendant argues that that was an unreasonable period of time to authorize such recordings. We find the record supports the conclusion that each recording was made upon separate and distinct authorization.

■■ We have examined defendant's argument that there was not sufficient foundation to show the quality and accuracy of the recordings to permit their admission into evidence. We find no merit upon this point.

Defendant's argument that it was error to play the tapes in their entirety during the course of the trial is directed to the fact that they included conduct and references to conversations between Weathington and defendant which we have heretofore held admissible.

Defendant argues that the trial court erred in permitting the State's Attorney to play six portions of the tapes during the course of his argument. This record simply shows argument by the State's Attorney with a transcript notation that a portion of a tape was played. Neither the text heard nor the duration of the recording can be ascertained. Defendant likens the playing of the recording to the reading from a trial transcript during the course of an argument. Such has been considered to be error for the reason that there was an overemphasis of selected testimony. In *People v. Birger* (1928), 329 Ill. 352, 160 N.E. 564, however, it was held permissible for a State's Attorney to make a paraphrased recapitulation of testimony where his recollection had been refreshed

from notes or a transcript. In *People v. Morse* (1975), 33 Ill. App. 3d 384, 342 N.E.2d 307, *cert. denied* (1976), 426 U.S. 953, 49 L. Ed. 2d 1191, 96 S. Ct. 3179, it was held that a brief reference to the transcript was not reversible error. In *People v. Davies* (1977), 50 Ill. App. 3d 506, 365 N.E.2d 628, the court concluded that it was within the discretion of the trial court to permit the reading of a trial transcript during closing argument. That opinion noted the recent decision in *People v. Pierce* (1974), 56 Ill. 2d 361, 308 N.E.2d 577, which determined that it was within the discretion of the trial court to permit a jury to have a review of testimony after it retired to deliberate. That opinion states that the use of paraphrased recollection by an attorney penalized accuracy without necessarily reducing the emphasis of such testimony, and under the rationale of *Pierce* found no abuse of discretion in permitting the reading of a transcript which was "not so extensive as to unduly emphasize the testimony at issue * * *." (*Davies*, 50 Ill. App. 3d 506, 514, 365 N.E.2d 628, 634.) From this record it cannot be ascertained whether the recording played was so extensive as to produce a substantial prejudice.

The two principal issues have been stated but not yet reviewed.

■ The trial court instructed the jury upon the issue of conspiracy in the language of IPI Criminal No. 6.04. The members of the panel agree that such instruction was error, in the light of the language of section 8—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 8—2), providing:

> "No person may be convicted of conspiracy to commit an offense unless an act in furtherance of such agreement is alleged and proved to have been committed by him or by a co-conspirator."

A majority of the panel concluded, however, that the evidence of defendant's guilt is so overwhelming that the error may be treated as harmless. Judge Trapp is of the opinion that the error is such a deviation from the law and precedent that reversal is required. He so concludes upon the authority of *People v. Dorsey* (1936), 363 Ill. 403, 2 N.E.2d 321; *People v. Galvan* (1976), 42 Ill. App. 3d 390, 356 N.E.2d 139, and *People v. Dickerson* (1976), 41 Ill. App. 3d 464, 353 N.E.2d 427.

In *Dorsey*, defendant was charged with conspiring to purchase for others the conspirator's securities at exorbitant and extortionate prices. The trial court refused defendant's tendered instructions designed to limit the jury's considerations to the allegations of a bill of particulars restricting the charge to allegations that certain securities were fraudulent and worthless. The trial court submitted the issues upon allegations regarding the extortionate charges. In reversing and remanding, the reviewing court held that the issues must be limited to the allegations stated in the bill of particulars, stating:

"None of the given instructions refer in any way to the bill of particulars or to the charge set forth in it. Obviously, the defendants were entitled to have the jury instructed on the issue as to which the prosecution was limited and upon which they were tried, and not upon some other and different issue." 363 Ill. 403, 408, 2 N.E.2d 321, 323.

In *Galvan*, defendants were charged with rape and conspiracy to commit aggravated kidnapping. The reviewing court found plain error arising in the fact that the issues instruction upon the charge of conspiracy was framed in terms of a conspiracy to commit rape and contained no mention of the elements of a conspiracy to commit aggravated kidnapping. In reversing and remanding, the reviewing court said that the jury must be instructed upon the offense charged.

In *Dickerson*, defendant was charged with receiving stolen property. The court determined that an element of that offense was defendant's knowledge of the fact that the property was stolen when he received it. The sum of the instructions, however, would permit the jury to convict defendant upon a separate offense of possession of stolen property. The latter was an offense for which defendant was not charged. The court said:

"It is elementary, however, that a defendant may be convicted of only the offense with which he is charged, not of another offense with which he might have been charged." (41 Ill. App. 3d 464, 467, 353 N.E.2d 427, 428.)

It was determined that the error required reversal. In the light of the requirements of the statute, we conclude that there was reversible error in giving the issues instruction tendered by the defendant.

■■ The majority of the panel also conclude that any error arising from the trial court's offer to replay, and to the subsequent replaying, of the "tapes" of defendant's telephone conversations with Weathington was harmless beyond a reasonable doubt by reason of the fact that the evidence of guilt was overwhelming. Judge Trapp concludes that upon this record, the trial court abused its discretion for the reason that the jury might readily infer and conclude that the trial court considered such evidence critically important.

No cases have been found which report instances where a trial judge has proffered to review the selected testimony after the jury has retired. The opinion in *People v. Pierce* (1974), 56 Ill. 2d 361, 308 N.E.2d 577, established the rule that it is within the discretion of the judge to determine whether a jury's request to review testimony heard during trial be allowed. A dissenting opinion would adopt the view of the ABA Standards, Trial by Jury §5.2 (1968), that the trial judge must grant the

jury's request where the evidence directly relates to an issue before the jury. The question here, however, is not whether the court abused its discretion in refusing the jury's request to play the recording, but rather whether there was an abuse of discretion in volunteering and directing the jury's attention to specific prosecution evidence, and inquiring whether it would aid in reaching the jury's verdict.

The latter view is founded upon consideration of the authority of *People v. Baltimore* (1972), 7 Ill. App. 3d 633, 288 N.E.2d 659, and *People v. Golub* (1929), 333 Ill. 554, 165 N.E. 196.

In *Baltimore*, the jury reported that it was unable to reach a verdict in a murder trial after 15 hours of deliberation. The judge inquired whether the jury could reach a verdict without regard to the death penalty. The reviewing court concluded that as a matter of plain error the inquiry might be construed by the jury to indicate an opinion of guilt and for such reason reversed and remanded.

In *Golub*, the jury had been deliberating for 4 hours. The foreman reported that they had not reached a verdict. The trial judge remarked that the jury should have no difficulty in reaching a verdict upon the evidence presented. The opinion states:

> "The juror, as well as the judge, has an independent duty to perform, and he ought to be left free to pronounce his own conviction. A verdict hastened by the action of the judge, however worthy the motive, cannot be the result of that deliberation which the law guarantees. Remarks by a trial judge calculated to effect the rendition of a verdict without affording the jury an opportunity for careful consideration are unwarranted and often lead to great abuse. Whether the error is harmless or prejudicial depends upon the facts of the case." 333 Ill. 554, 561, 165 N.E. 196, 199.

In the context of whether the error was prejudicial or harmless, the opinion noted that the trial judge's remarks did not either expressly, or by implication, indicate that the jury should reach a particular conclusion. The record did not disclose how long the jury deliberated after they had retired a second time.

Here, the testimony concerned events occurring over a period of 11 months. The report of the foreman that the jury was progressing to a verdict negates any suggestion that the jury was then unable to reach a verdict, or was confused or uncertain concerning the evidence. The record discloses that the jury had continued to deliberate some 20 hours after the refusal of the initial request to hear the recording. This suggests that the jury members were not prevented from reaching a verdict because they could not recall or were uncertain about the testimony heard. This record does show that a verdict was returned within 45

minutes following the replaying of the "tapes." As distinguished from the facts in *Golub*, it is reasonable to conclude that the playing of the "tapes" upon the suggestion of the trial judge had a prejudicial consequence.

For the reasons stated herein, the judgment of the trial court is affirmed.

Affirmed.

CRAVEN and REARDON, JJ., concur.