THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DWIGHT REYNOLDS *et al.,* Defendants-Appellants.

First District (4th Division)   No. 76-485

Opinion filed February 16, 1978.

James J. Doherty, Public Defender, of Chicago (Robert T. Badesch and Donald S. Honchell, Assistant Public Defenders, of counsel), for appellants.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon, Joan S. Cherry, and Rimas F. Cernius, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE JOHNSON delivered the opinion of the court:

Defendants, Dwight Reynolds, Elmore Rocquemore, and Larry Suggs, were indicted for the offenses of armed robbery (Ill. Rev. Stat. 1973, ch. 38, par. 18—2), and attempt armed robbery (Ill. Rev. Stat. 1973, ch. 38, par. 8—4). A jury trial was held and defendants were found guilty of armed robbery. Defendant Suggs was sentenced to a term of 6 to 18 years in the Illinois State Penitentiary. Defendants Reynolds and Rocquemore received sentences of 4 to 12 years. Defendants appeal and we affirm.

The issues presented for review are (1) whether the trial court properly exercised its discretion when it allowed certain portions of testimony to be read to the jury, and (2) whether the defendants were proved guilty of armed robbery beyond a reasonable doubt.

The facts are as follows. On November 10, 1973, at approximately 11 p.m., Edward Lee and William Edwards were accosted by six young men in a parking lot located in the 1600 block on West Madison Street, in

Chicago. The two elderly men had returned to the parking lot after attending a Masonic Lodge meeting. Lee had unlocked his automobile and entered on the driver's side; Edwards entered on the passenger side. Lee testified that six men came from the north and placed themselves around the car. One man was in front of the vehicle, two were on each side, and one man placed himself behind the car. Lee stated he observed that the man on the passenger side carried a sawed-off shotgun, and that the assailant on the driver's side brandished a blue-steel handgun. One of the men stated that if Lee and Edwards did not give up their money, they would blow their heads off. Lee dropped his keys to the ground and gave the men his wallet containing seven $1 bills. The men fled soon after and Lee screamed, "Police, stick up." He then observed police running from the south side of Madison Street; one of the officers stopped and told Lee to wait at the car. Lee continued to watch as the police officers pursued his assailants across an alley located to the north of the parking lot.

Four plainclothes police officers were located across from the parking lot, on the south side of Madison Street, at the time the robbery occurred. The officers were Fred Osleber, Carter Osleber, Kyle Witt, and Dennie Lemke, all of whom testified at the trial. They heard a woman's voice scream for the police and then noticed the six men surrounding Mr. Lee's automobile. They observed that the men positioned themselves around the car, three on the driver's side, two on the passenger side, and one man at the rear. The parking lot was illuminated from lights at the center of the lot, floodlights on the A & P store located to the west of the lot, and lights on Madison Street. As the police officers ran toward Lee's car, they announced their office. The group of assailants then turned toward the oncoming police. At that point, the officers, except Officer Witt who was in the rear, were able to see the men's faces. Officer Fred Osleber testified that he saw the faces of defendants Rocquemore and Suggs. Officer Carter Osleber testified that he specifically recognized defendant Rocquemore with whom he was familiar. He and Officer Lemke testified that they observed all three defendants around the car. According to the testimony of Officer Carter Osleber, defendants Rocquemore and Suggs were standing on the driver's side of the car, and defendant Reynolds was standing behind the car or toward the rear on the passenger side. The officers testified they observed a shotgun in the hands of one of the men; several of the officers stated that this man was standing on the driver's side of the vehicle.

The six men then fled toward a building located directly north of the parking lot. They fled into the building's backyard, followed closely by the police officers. The officers did not lose sight of the men until some of them entered a staircase at the rear of the building. One man was apprehended at the bottom of the staircase by Officers Fred Osleber and

Lemke. This suspect was disarmed of a .22-caliber automatic pistol which contained nine rounds of ammunition. The other five men were pursued up the stairs by Officers Carter Osleber and Witt. The officers testified that they lost sight of the men momentarily as they turned each landing. Officer Osleber stated that he observed one or two individuals going into the top floor apartment. Officer Witt testified that he observed five men trying to enter through the door on the top floor. When they reached the top floor, the officers saw that the apartment door was being closed. Osleber threw himself against the door and a struggle ensued. He was assisted by Officer Witt and the other two officers who had arrived with the apprehended suspect. They succeeded in gaining entry and observed four or five men running toward the front of the apartment and removing their outer garments as they ran. The officers followed these individuals into the living room and observed that they were now wearing T-shirts. Officer Carter Osleber testified that when he observed defendant Rocquemore in the parking lot he was wearing a red suit, and in the apartment Rocquemore was found wearing the pants to that suit.

In the apartment, the officers observed the three defendants, two other young men, and several women. The defendants were searched and a set of keys and seven $1 bills were recovered from defendant Rocquemore. The complainant was then brought into the apartment where he identified the defendants, the apprehended suspect, and two other men as the group who had robbed him.

Geraldine Ramsey testified that she resided in the top floor apartment at 1631 West Warren. On November 10, 1973, she was planning a party in her apartment. She stated that defendant Rocquemore arrived at her apartment between 3 and 4 p.m., defendants Reynolds and Suggs arrived between 6 and 7 p.m.; none of the defendants left her apartment prior to the arrival of the police. However, she did notice several other individuals leave the party for a few minutes at approximately 7 or 7:30 p.m. She stated that these men ran straight through the apartment and exited through the front door shortly before the police arrived.

In the midst of their deliberations, the jury requested from the court specific portions of the trial transcript. After a first request was denied, the jury sent a second written note to the court, which read:

> "We need the testimony that more than one policeman positively identified the defendants around the car. Without this, one jury juror cannot reach a decision."

The defense counsel objected to such a limited reading, saying that impeaching testimony should also be read to the jury or undue emphasis would be placed on one portion of the testimony. The court pointed out that the jury did not ask to hear the cross-examination and decided to grant the request. The court then allowed certain parts of the notes of

three court reporters taken during the testimony of Officers Fred Osleber, Carter Osleber, and Lemke to be read to the jury.

Defendants contend that the trial court erred when it allowed only portions of the direct testimony of three police officers to be read to the jury. Defendants argue that this reading placed undue emphasis or prominence on the portion of testimony read, and insist that the cross-examination testimony of the officers should have been read also. According to the defendants, the trial court abused its discretion when it allowed the limited reading of the trial testimony. The State maintains that there was no error since the trial court properly exercised its discretion in compliance with a specific request from the jury, and we agree.

■■■ The law is well established, and the defendants do not dispute, that it is within the discretion of the trial court to allow or refuse a request of the jury for a review of testimony. (*People v. Autman* (1974), 58 Ill. 2d 171, 176, 317 N.E.2d 570, 572; *People v. Queen* (1974), 56 Ill. 2d 560, 565, 310 N.E.2d 166, 169; *People v. Pierce* (1974), 56 Ill. 2d 361, 364, 308 N.E.2d 577, 578.) In *Pierce,* the supreme court stated that:

"The trial court will have a full knowledge of the case. It will know the charges against the accused, the witnesses and their supporting or defeating testimony and other evidence which may have been presented. It will be in a position to assess the request and judge whether a review of testimony, considering the circumstances, will be helpful or hurtful to the jury's proper deliberations. This question of review, like so many others which appear in the course of trial, is best entrusted to the trial court's sound discretion." (*Pierce,* 56 Ill. 2d 361, 364.)

Furthermore, the established standard of review requires that:

"A decision within the trial court's discretion will not be disturbed on appeal unless there has been an abuse of discretion." (*Pierce,* 56 Ill. 2d 361, 364.)

In view of the facts and circumstances of the instant case, we do not find that the trial court abused its sound discretion when it granted the jury's specific request and refused to allow the reading of additional unrequested testimony pertaining to the same matters.

The record reveals that the trial court properly and conscientiously denied the jury's initial request for a review of the testimony. The first jury note requested:

"The three policemen's testimony that they have identified the defendants at the car. The testimony of the policeman who found the keys on one of the defendants. Questions and answers to both of the above."

The trial court reasonably determined in its discretion that to grant the

entire request would impede the progress of the case (*People v. Jackson* (1975), 26 Ill. App. 3d 618, 629, 325 N.E.2d 450, 458), and that to allow the review of one area of testimony without a review of the other would not be fair to all parties. Then, pursuant to a discussion with the prosecution and defense counsel, the trial court properly made further inquiry of the jury in order to ascertain the specific testimony requested by them. (*Jackson*, at 629.) This inquiry resulted in the second written note from the jury in which the jurors specifically requested a review only of the testimony "that more than one policeman positively identified the defendants around the car." They did not ask to review cross-examination testimony of the three officers. The court then determined that a review of the specific testimony requested would aid the jury in its deliberations (*Jackson*, at 629) and allowed it to be read. We do not believe that the decision of the trial court was injurious to the defendants, since the jury had heard all cross-examination testimony elicited at the trial, witnessed the manner and demeanor of the witnesses, and was qualified to determine the credibility of their testimony. Therefore, we cannot find that the court here abused its discretion when it determined that it was not necessary to review evidence relating to the specific testimony requested.

The defendants next contend that the State failed to prove them guilty of armed robbery beyond a reasonable doubt. Defendants point out that there were inconsistencies in the testimony of the State's witnesses, and argue that a reversal of their convictions is required. After a careful review of the record in this matter, we must disagree.

• 3-5 Although it is true that there were some inconsistencies in the testimony of the police officers, these inconsistencies were not sufficient to render the officers' testimony incredible. Furthermore, throughout their testimony, the officers remained positive on all material matters, unshaken on cross-examination, and were not so unreasonable or improbable as to be unworthy of belief. (*People v. Guido* (1962), 25 Ill. 2d 204, 209, 184 N.E.2d 858, 860.) In the instant case, three police officers positively identified the defendants as the men who robbed the complainant, were chased, and later apprehended in the apartment of a nearby building. Officer Carter Osleber stated that he recognized the faces of defendants Rocquemore and Suggs around the car at the time of the robbery; he was familiar with these individuals because he had encountered them on prior occasions. The testimony of an identification witness is strengthened to the extent of his prior acquaintance with the accused. (*People v. Lumpkin* (1975), 28 Ill. App. 3d 710, 713, 329 N.E.2d 262, 264.) Therefore, the jury could reasonably have found the defendants guilty of armed robbery. It is the duty and province of the jury to determine the credibility of the witnesses and the weight to be given their testimony, and a reviewing

court will not substitute its judgment for that of the jury. *People v. Coulson* (1958), 13 Ill. 2d 290, 295-96, 149 N.E.2d 96, 98.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

LINN and DIERINGER, JJ., concur.