Larry P. CRAMER, Petitioner-Appellant,

v.

Tyrone C. FAHNER, Attorney General of the State of Illinois, Respondent-Appellee.

Tyrone C. FAHNER, Attorney General of the State of Illinois, Respondent and Cross-Appellant,

v.

Larry P. CRAMER, Petitioner and Cross-Appellee.

Nos. 80–2545, 80–2757.

United States Court of Appeals, Seventh Circuit.

Argued April 9, 1981.

Decided June 30, 1982.

Rehearing Denied Aug. 13, 1982.

Certiorari Denied Nov. 15, 1982.
See 103 S.Ct. 376.

Donald M. Tennant, Champaign, Ill., for petitioner-appellant.

M. Anita Donath, Asst. Atty. Gen., Chicago, Ill., for respondent-appellee.

Before CUMMINGS,* Chief Judge, SWYGERT,** Circuit Judge, and HOFFMAN,*** Senior District Judge.

HOFFMAN, Senior District Judge.

Petitioner appeals the denial by the district court of a petition for writ of habeas corpus on his conviction in an Illinois state court for solicitation to commit murder. Respondent, State of Illinois, cross-appeals the grant of the writ on petitioner's conviction for conspiracy to commit murder. We affirm both actions on summary judgment by the lower court.

Petitioner, an Illinois attorney, was indicted on ten counts of conspiracy and solicitation, based on having planned with a former client from February to November, 1974, to have petitioner's wife murdered. Petitioner did not testify at trial; the most important evidence against him was the testimony of Weathington, the former client, and tapes of conversations between Weathington and petitioner, made after Weathington went to the police on November 18, 1974. Other prosecution witnesses included agents of the Illinois Bureau of Investigation (I.B.I.) and Patty Cozad, who testified that she accompanied Weathington on a trip to Chicago, where Weathington met petitioner and bought a knife.

After a general guilty verdict was returned on the four conspiracy and six solicitation counts, the state trial court granted petitioner's motion to dismiss the two conspiracy counts—three and ten—that were based on overt acts on December 11, after

---

* Circuit Judge Sprecher heard the oral argument and voted to affirm. He also had concurred in Judge Hoffman's suggested opinion but died before reviewing Judge Swygert's partial dissent. He was succeeded on the panel by Chief Judge Cummings.

** At the time of oral argument, the Honorable Luther M. Swygert was a circuit judge in active service; he assumed senior status on August 1, 1981.

*** The Honorable Walter E. Hoffman, Senior District Judge of the District of Virginia, is sitting by designation.

the sole co-conspirator had gone to the police, at which point the conspiracy ended by law. The trial court, however, rejected petitioner's argument that the jury could have based its general verdict on the two invalid charges rather than the two alleging overt acts before November 18. The conviction was upheld by the Illinois Appellate Court. *People v. Cramer*, 64 Ill.App.3d 688, 21 Ill. Dec. 500, 381 N.E.2d 827 (1978). Leave to appeal was denied by the Illinois Supreme Court on January 25, 1979 (No. 51432), and the Supreme Court of the United States denied certiorari, 444 U.S. 828, 100 S.Ct. 53, 62 L.Ed.2d 35 (1979).

Petitioner's collateral attack was more successful: the district court granted the writ as to the conspiracy conviction because petitioner's right to due process was violated by the possibility that the jury based its verdict on overt acts in the invalid conspiracy counts. The court initially determined that the writ should not issue because petitioner also was sentenced to a concurrent one-to-three year term for solicitation. *Cramer v. Scott*, No. 79–2238 (C.D.Ill. Aug. 27, 1980). The court, on reconsideration, agreed to issue the writ despite the existence of a valid concurrent sentence. *Id.* (C.D.Ill. Oct. 24, 1980). The State of Illinois cross-appeals the issuance of the writ as to the conspiracy conviction.

In addition to respondent's cross-appeal, this court must consider four issues raised by petitioner: (1) Was the solicitation indictment unconstitutionally vague because it merely tracked the language of the Illinois statute of "encouraging" and "requesting," rather than setting forth the very words used to solicit Weathington? (2) Did the state conceal certain evidence that would have allowed petitioner to impeach Patty Cozad, whose testimony petitioner claims was vital to the defense? (3) Was

evidence of other crimes and wrongful acts by petitioner erroneously admitted and, if so, did it so prejudice petitioner as to make his trial fundamentally unfair? (4) Did the actions of the trial judge, in offering to replay and replaying tapes containing damaging evidence against petitioner many hours after the jury had twice requested the evidence, impermissibly intrude on the jury's function and coerce a guilty verdict?

## VALIDITY OF CONSPIRACY CONVICTION

### A. VERDICT COULD HAVE BEEN BASED ON INVALID COUNTS

Petitioner made two arguments to the Illinois Appellate Court, one statutory and one constitutional, as to why his conspiracy conviction should not stand, which were, respectively, that the trial court gave erroneous instruction under Illinois law and that the jury might have based its guilty verdict on the overt acts in the invalid counts. The Illinois court agreed that one conspiracy instruction was an erroneous statement of Illinois law,[1] though harmless error in light of the overwhelming evidence of guilt, but failed to address the constitutional issue. The federal court, however, upon consideration of the constitutional argument, determined that petitioner's due process rights were violated because the jury's general verdict could have been based on the invalid counts later dismissed. We agree that, because we are unable to tell whether the jury based its verdict on the valid or invalid counts, the general conspiracy conviction was unconstitutional. Where a verdict is supportable on one ground but not another, and it is impossible to tell which grounds the jury selected, the conviction is unconstitutional. *Stromberg*

---

1. Illinois Pattern Instruction Criminal No. 6.04 only requires proof "[t]hat an act in furtherance" was performed, whereas the statute itself requires that an act in furtherance be alleged and proved, which the Illinois majority saw as meaning that the same act that was alleged in the indictment must be proved. *Cramer, supra*, 21 Ill.Dec. at 506, 381 N.E.2d at 833. Respondent reargued that issue, already disposed of by the Illinois court, on this appeal, relying principally on cases interpreting the federal conspiracy statute as not requiring proof of the same overt act alleged in the indictment. Not only is respondent's reliance on the inapposite federal cases misplaced, but we will not disturb the Illinois Appellate Court's interpretation of its own state law.

*v. California*, 283 U.S. 359, 368, 51 S.Ct. 532, 535, 75 L.Ed. 1117 (1931). Respondent distinguishes the invalidation of the conviction in *Stromberg* as being grounded on the fact that one of the three possible bases for conviction under the statute was *unconstitutional*, whereas here two possible bases for conviction were merely invalid. It is true that in *Williams v. North Carolina*, 317 U.S. 287, 291–92, 63 S.Ct. 207, 209–210, 87 L.Ed. 279 (1942), just as in *Stromberg*, one of the two theories under which the case was submitted to the jury was unconstitutional and therefore the judgment could not be sustained. However, in *Yates v. United States*, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), the ground on which the verdict could have rested, for which it was set aside, was legally invalid rather than unconstitutional. A general guilty verdict was returned based on violation of a statute that forbad advocating the violent overthrow of the government or organizing the Communist Party. The conviction was set aside, not because one of the prohibitions was unconstitutional, but because the three-year statute of limitations had run on the organizing charge, since the Party was first organized in this country in 1945. Given the lack of clarity in the jury instructions, the Court wrote, "we have no way of knowing whether the overt act found by the jury was one it believed to be in furtherance of the 'advocacy' rather than the 'organizing' objective of the alleged conspiracy." Similarly, this conspiracy conviction must be set aside. *Id.* at 311–12, 77 S.Ct. at 1072–1073.

## B. INAPPLICABILITY OF CONCURRENT SENTENCE DOCTRINE

◼ We likewise uphold Judge Baker's decision to issue the writ as to the conspiracy conviction, despite the existence of a valid concurrent sentence on the solicitation conviction, for the reasons he set out in his supplemental opinion and order: the principles behind the availability of habeas for consecutive sentences, one of which is scheduled to be served in the future, as set out in *Peyton v. Rowe*, 391 U.S. 54, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968); the disapproval of the so-called "concurrent sentence" doctrine in *Benton v. Maryland*, 395 U.S. 784, 787–93, 89 S.Ct. 2056, 2058–2061, 23 L.Ed.2d 707 (1969); and the availability of habeas corpus even after a sentence is served to avoid future consequences from an invalid conviction, as explained in *United States v. Fiswick*, 329 U.S. 211, 222, 67 S.Ct. 224, 230, 91 L.Ed. 196 (1946). The circuits have gone both ways in examining the continuing validity of the "concurrent sentence" doctrine. *Compare Sciberras v. United States*, 404 F.2d 247, 249–50 (10th Cir. 1968) (Habeas remedy is available to attack a concurrent sentence), with *United States v. Truong Dinh Hung*, 629 F.2d 908 (4th Cir. 1980); *Van Geldern v. Field*, 498 F.2d 400, 403–04 (9th Cir. 1974); *United States ex rel. Weems v. Follette*, 414 F.2d 417, 418–19 (2d Cir. 1969), *cert. denied*, 397 U.S. 950, 90 S.Ct. 973, 25 L.Ed.2d 131 (1970) (The continuing validity of the "concurrent sentence" doctrine was upheld).

The Supreme Court has explained that the concurrent sentence doctrine "cannot be taken to state a jurisdictional rule", *Benton, supra*, 395 U.S. at 790, 89 S.Ct. at 2060, based on lack of a justiciable case or controversy, although it "may have some continuing validity as a rule of judicial convenience," *id.* at 791, 89 S.Ct. at 2060, holding merely that "there is no jurisdictional bar to consideration of challenges to multiple convictions, even though concurrent sentences were imposed," *id.* The Court implied that a habeas court may consider constitutional attack on one conviction, even though a petitioner is serving a concurrent sentence on a valid second conviction, if there is a possibility of adverse collateral consequences from the existence of the invalid conviction, *id.* at 790–91, 89 S.Ct. at 2060, but, because the state court did not apply the doctrine, the Supreme Court found it "unnecessary to resolve [the] dispute" as to whether "the concurrent sentence doctrine survives as a rule of judicial convenience." *Id.* at 792, 89 S.Ct. at 2061.

◼ Essentially, the state of the law now is that it is in the discretion of the habeas court whether it will examine the validity

of one conviction, despite a valid second conviction for which petitioner is serving a concurrent sentence, or refuse to pass on the constitutionality of the conviction, based on the court's assessment of the collateral effect of the conviction. "The proper exercise of this discretion depends upon the degree of prejudice that may be attributed to the challenged conviction." *Van Geldern, supra*, at 403. The Fourth Circuit sees the application of the concurrent sentence rule, after *Benton*, as "restricted to situations where there is no substantial possibility that the unreviewed conviction will adversely affect the defendant's right to parole or expose him to a substantial risk of adverse collateral consequences." *Truong Dinh Hung, supra*, at 931.[2]

Judge Baker did not specifically set out in his supplemental opinion whether he reconsidered and ordered the writ to issue because of the danger of collateral consequences to petitioner, but we read his reliance on "the rationale of *Benton v. Maryland* ... disapproving the 'concurrent sentence doctrine' ..." as indicating that he followed the *Benton* principle of looking to the possibility of consequences flowing from a second conviction. We therefore uphold his discretionary grant of the writ to avoid the collateral effects of a second conviction.

## SOLICITATION COUNTS

■ Petitioner's fourfold attack on his solicitations conviction, to be successful, must go beyond merely proving that the alleged trial errors violated Illinois' own law and procedural rules and show that the errors rose to the constitutional level, either by making his trial so fundamentally unfair as to deny him due process or by abridging a specific constitutional guarantee, such as the right to notice of the charges against him, which is violated by a constitutionally vague indictment. *United States ex rel.*

*Bibbs v. Twomey*, 506 F.2d 1220, 1222–23 (7th Cir. 1974), *appeal after remand*, 538 F.2d 151 (1976) (en banc), *cert. denied*, 429 U.S. 1102, 97 S.Ct. 1126, 51 L.Ed.2d 551 (1977).

■ Petitioner's first attack on his conviction is aimed at the six solicitation counts which he claims were unconstitutionally vague for failure to include the very words or the substance of the words used to solicit Weathington to murder petitioner's wife. The indictment tracked the language of the Illinois statute: petitioner was accused of encouraging and requesting Weathington to murder his wife. Petitioner contends that because Illinois demands that a perjury indictment set out the operative words, *People v. Aud*, 52 Ill.2d 368, 288 N.E.2d 453 (1972), the same should hold true for solicitation, the essence of which he claims is also the words spoken. But Illinois itself has twice upheld solicitation indictments stated in the language of the statute. *People v. Powell*, 72 Ill.2d 50, 18 Ill.Dec. 318, 377 N.E.2d 803 (1978), *cert. denied*, 440 U.S. 907, 99 S.Ct. 1214, 59 L.Ed.2d 455 (1979); *People v. George*, 67 Ill.App.3d 102, 23 Ill.Dec. 583, 384 N.E.2d 377 (1978). Even if the Illinois court was wrong in making this distinction under Illinois law, it is not our role on habeas corpus to set aside a state court's interpretation of its own law. *United States ex rel. Burnett v. People of Illinois*, 619 F.2d 668, 671 (7th Cir.), *cert. denied*, 449 U.S. 880, 101 S.Ct. 229, 66 L.Ed.2d 104 (1980). Petitioner attempts to distinguish those two cases by the fact that the solicitation here was based on conversations that took place over a nine-month period, but that is all the more reason for not demanding that the State set out the very words used to solicit. The offense of perjury is readily distinguishable from solicitation; the former is directed to a fixed statement, the latter at times to an

---

**2.** Judge Winter, writing for the majority on all other issues, was in the minority in disapproving the "concurrent sentence" doctrine. *Id.* at 922–23. He insisted that Judge Russell's dissent, *id.* at 931–32, in which Judge Hall concurred, was in direct contradiction to an earlier

Fourth Circuit opinion granting the writ where a valid concurrent sentence existed, *Close v. United States*, 450 F.2d 152, 155 (4th Cir. 1971), *cert. denied*, 405 U.S. 1068, 92 S.Ct. 1513, 31 L.Ed.2d 799 (1972).

entire conversation. With perjury, the only issue is whether or not it is true; solicitation, on the other hand, may be based on lengthy detailed conversations, some of which may be direct but many portions of which may consist of subtle, indirect inducements, the words of which are meaningless when taken out of context.

■ Illinois' requirements for an indictment are that it (1) apprise the defendant with reasonable certainty of the nature of the offense in order to allow him to prepare a defense; (2) include the elements of the offense; and (3) sufficiently identify the particular offense committed so as to protect defendant from double jeopardy. *George, supra; see also, Powell, supra.*

As the District Court here pointed out, "It has been uniformly held by [the Supreme] Court that the sufficiency of an indictment cannot be reviewed in habeas corpus proceedings," *Knewel v. Egan*, 268 U.S. 442, 45 S.Ct. 522, 69 L.Ed. 1036 (1925). Relief should only be granted where the indictment is "so fatally defective that under no circumstances could a valid conviction result from facts provable under the indictment." *Johnson v. Beto*, 383 F.2d 197, 198 (5th Cir.), *cert. denied*, 393 U.S. 868, 89 S.Ct. 153, 21 L.Ed.2d 136 (1968). Such a statement cannot be made of the solicitation counts against petitioner.

## CONCEALMENT OF WITNESS INFORMATION

Petitioner next argues that the prosecution concealed impeachment information about Patty Cozad, whom he views as a key prosecution witness, and thus denied him his right to confront the witness against him. Whether the trial court violated Illinois' procedural rules about revealing such information is not an issue on habeas corpus; we need only determine whether the state denied petitioner due process by concealing evidence that was "material" in a constitutional sense.

■ We reject respondent's first two defenses—that the accused did not make a specific request for impeachment material against Cozad and that the prosecution itself was not aware of any material the police had that could have been used to impeach Patty Cozad. For purposes of determining the prosecution's duty to reveal material favorable to an accused under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), "it is not fatal to petitioner's contention that his attorney made no request for the testimony", and knowledge of the police should be imputed to the prosecution. *Clarke v. Burke*, 440 F.2d 853, 855 (7th Cir. 1971), *cert. denied*, 404 U.S. 1039, 92 S.Ct. 718, 30 L.Ed.2d 731 (1972). However, where, as here, there is no knowing use of false evidence by the prosecution, petitioner must show a substantially higher probability that disclosure would have altered the result. *Id.* That is, absent "active misconduct on the part of the prosecution, the 'suppressed' evidence must be 'vital and material' to furnish grounds for the reversal of a conviction." *Id.*

■ The petitioner's allegation is that the state concealed Patty Cozad's address, real name, use of narcotics, and pending state charges against her for a narcotics sale to the chief investigator in petitioner's case. Even if this information would have served to impeach Patty Cozad's testimony, that testimony was not vital to the state's case. Her testimony merely served to corroborate Weathington's claim to have been in Chicago on September 26 and 27, 1974, at the same time petitioner was at the Palmer House in that city with his wife for a legal meeting. Cozad testified that she accompanied Weathington to Chicago on those dates and knew what he did and where he went on those dates, including a trip to buy a knife, one of the overt acts alleged in the indictment. We agree with the district court that, because she "was not an eye-witness to the alleged solicitation or to any concerted activity between the petitioner and Weathington and gave no testimony as to those events," her testimony was "cumulative and tangential."

The standard for what is "material" in a constitutional sense was set out by the Su-

preme Court in the leading case of *United States v. Agurs*, 427 U.S. 97, 109–110, 96 S.Ct. 2392, 2400, 49 L.Ed.2d 342 (1976): "The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." The omitted evidence must create "a reasonable doubt that did not otherwise exist," evaluated "in the context of the entire record." *Id.* at 112, 96 S.Ct. at 2401. If, eliminating the additional evidence, there is still no reasonable doubt of guilt, the trial was fair and the writ should not issue. *Id.* at 112–13, 96 S.Ct. at 2401–2402. It would be "far too restrictive on the state[s]" for a habeas court to vacate a state conviction simply because suppressed evidence, such as a police report, "*might* have led the jury to entertain a reasonable doubt as to his guilt." *Ross v. State of Texas*, 474 F.2d 1150, 1152–53 (5th Cir.), *cert. denied*, 414 U.S. 850, 94 S.Ct. 141, 38 L.Ed.2d 98 (1973). *See also United States ex rel. Moore v. Brierton*, 560 F.2d 288, 292 (7th Cir. 1977), *cert. denied*, 434 U.S. 1088, 98 S.Ct. 1285, 55 L.Ed.2d 794 (1978) (Where a demand is not made or is made in general terms, such as for all statements from all witnesses to the police or all probation reports on 14 people, the standard is whether the evidence creates a reasonable doubt that did not otherwise exist, evaluated in the light of the entire record).

Because no reasonable doubt exists of petitioner's guilt even without Patty Cozad's testimony, the failure to reveal information that might have been used to impeach her was not a deprivation of petitioner's constitutional rights.

### ERRONEOUSLY ADMITTED EVIDENCE

Petitioner protests the admission of evidence that he had used marijuana, committed adultery, had bar association complaints filed against him, and solicited the murder of other people. The evidence came up in Weathington's direct testimony, on the tapes, and on cross-examination of Mrs. Cramer.

■ On habeas, mere failures to observe Illinois evidentiary rules, without more, will not occasion the issuance of a writ. However, petitioner's claim is that the cumulative effect of the allegedly erroneous rulings was so prejudicial that it created a danger that he was convicted for those other acts, rather than for the crimes for which he was on trial. Evidence of other wrongs is admissible under Illinois law if relevant to an issue other than character or propensity to commit the crime charged. The Illinois Appellate Court found the evidence of marijuana, adultery, and bar association complaints relevant to the developing course of conspiracy, a conclusion with which the federal habeas court agreed.

■ Weathington's testimony on marijuana was that he went to the office of petitioner, his former attorney, to request a $20 loan. When asked what collateral he had, he said, he handed over the marijuana, whereupon petitioner smoked some in his pipe. Reasoning that Illinois allows some latitude in proof of the *relationship* of co-conspirators and the purpose of the conspiracy, *People v. Billburg*, 314 Ill. 182, 145 N.E. 373 (1924), the trial court admitted the evidence. We agree with what the Illinois Appellate Court wrote in upholding that admission, *Cramer, supra*, 21 Ill.Dec. at 505, 381 N.E.2d at 832:

> The evidence at issue here was clearly intertwined with the negotiation and progress of the conspiracy. It did not concern wholly independent and unrelated conduct clearly apart from the offenses charged. The transaction concerning a loan 'secured' by marijuana was the point from which defendant opened discussion or suggestion of the acts constituting the objective of the conspiracy. That transaction was of a nature that might suggest to defendant that Weathington would be receptive to the proposals and did, as the trial judge concluded, explain the relationship between the parties.

■ The adultery, bar complaints, and solicitation of other murders came up in

Weathington's testimony when he quoted petitioner as saying that he could not press forward at that time with the plans to kill his wife because of pressure he was under from another quarter. Weathington's version of what petitioner told him was that petitioner had had an affair with the wife of a client and the woman's mother-in-law, upon learning of the liaison, complained to the bar association. At one point petitioner said that he might need to order two more murders if the woman continued to press the complaints. The prosecution told the trial judge that adultery was relevant to show petitioner's motive to solicit murder. Although the prosecution failed later to make the tie between adultery and motive, we agree with the view of the Illinois Appellate Court that the adultery evidence was nevertheless admissible as relevant to the *delay* in carrying out petitioner's plan:

> The testimony concerning the extramarital affair originated in statements by defendant to Weathington explaining the cause for delay in the further discussion of the plan for carrying out the conspiracy. It was presented to the jury in the context of the course of the developing conspiracy, rather than introduced as wholly extraneous to the relation between the parties.

*Id.* In like manner, the bar association complaints were part of petitioner's explanation to Weathington of the delay in the plans, and the petitioner's mention of other killings was part of his explanation to Weathington at the time as to how he would deal with the adultery and bar complaint problems. In addition, the killings came up in the context of a discussion of a possible hit man to kill Mrs. Cramer.

Petitioner's argument that references to these acts should have been excised from the above-described tapes analogizes to the rule requiring deletion of references to other crimes from a confession introduced at

trial. *Cf. United States ex rel. Floyd v. Wilkins*, 367 F.2d 990 (2d Cir. 1966) (Where judge gave no curative instruction, unedited confession's admission was error). There is, however, a practical difference between the two: whereas a written confession can be cut without harming its logic or continuity, excisions from tapes of conversations will often render them disjointed and meaningless.

The trial court should not have allowed prolonged questioning on cross-examination of petitioner's wife on her knowledge of petitioner's adultery and bar association problems, which the trial judge belatedly stopped after her repeated protests of ignorance. For three reasons, however, we do not find that error to present the occasion for the issuance of a writ. First, the judge's limiting instructions at the close of the prosecution's case-in-chief that "any evidence received in regards to the use of marijuana or immoral conduct was presented for the limited purpose of showing the relationship between the defendant and Mr. Weathington," and his instructions after closing arguments for the jury to consider such evidence only for the limited purposes for which it was allowed effectively cured any prejudice from erroneously admitted evidence.[3] Proper instructions will usually suffice to correct damage from any erroneously admitted evidence or evidence admissible only for a limited purpose. *United States v. Castaldi*, 453 F.2d 506, 511–12 (7th Cir. 1971), *cert. denied*, 405 U.S. 992, 92 S.Ct. 1263, 31 L.Ed.2d 460 (1972); *United States v. Teller*, 412 F.2d 374, 380 (7th Cir. 1969), *cert. denied*, 402 U.S. 949, 91 S.Ct. 1603, 29 L.Ed.2d 118 (1971). *See also, United States v. Quinn*, 398 F.2d 298, 303 (7th Cir.), *cert. denied*, 393 U.S. 983, 89 S.Ct. 451, 21 L.Ed.2d 444 (1968).

The second reason for not granting a writ for any errors in admitting

---

**3.** Petitioner argued that the instructions should have been given at the moment the allegedly inadmissible evidence was given. We do not necessarily agree with the Illinois court's answer to that argument that "orally instructing at the close of all prosecution evidence would more effectively impress than rulings scattered throughout several days of testimony." *Id.* However, the cases we cite, *see* textual discussion *infra*, make clear that proper instructions, given at the time the evidence is admitted or later, are usually effective.

this evidence is the limitation on the role of a federal habeas court in examining such errors. A habeas court should not invalidate a state conviction unless the erroneously admitted evidence so tainted the trial that it was fundamentally unfair. Although the trial was not conducted particularly well at the state level, we do not believe petitioner was denied due process. It is not the role of a federal habeas court to correct state-court errors; the state's administration should not be interfered with unless a federal right is violated. *McGee v. Eyman*, 310 F.2d 230, 232 (9th Cir.), *motion to file petition for writ denied*, 371 U.S. 917, 83 S.Ct. 230, 9 L.Ed.2d 267 (1962). Unless the claimed error amounted to a fundamental defect so great that it inherently resulted in a complete miscarriage of justice, the conviction should stand. *Jackson v. Hutto*, 508 F.2d 890, 891 (8th Cir. 1975). State evidentiary rulings should rarely be the cause of habeas review. *Buder v. Bell*, 306 F.2d 71, 75–76 (6th Cir. 1962) (Admission of evidence is "peculiarly within the province of the trial judge," who has "wide latitude and discretion in such matters" and errors that would warrant reversal on direct appeal should "rarely . . . warrant a collateral attack on a judgment of conviction as being a denial of due process of law."). *Accord, Maggitt v. Wyrick*, 533 F.2d 383, 385 (8th Cir.), *cert. denied*, 429 U.S. 898, 97 S.Ct. 264, 50 L.Ed.2d 183 (1976); *United States ex rel. Choice v. Brierley*, 460 F.2d 68, 70–71 (3d Cir. 1972); *Walle v. Sigler*, 456 F.2d 1153, 1155–56 (8th Cir. 1972); *United States ex rel. Holliday v. Adams*, 443 F.2d 7 (2d Cir. 1971). *See also Spencer v. Texas*, 385 U.S. 554, 564, 87 S.Ct. 648, 653, 17 L.Ed.2d 606 (1967).

Erroneous evidentiary rulings will not cause a writ to issue unless a specific constitutional guarantee has been violated, which is not claimed by petitioner here, or the error is of such magnitude that the results is a denial of fundamental fairness. *United States ex rel. Clark v. Fike*, 538 F.2d 750, 757 (7th Cir. 1976), *cert. denied*, 429 U.S. 1064, 97 S.Ct. 791, 50 L.Ed.2d 781 (1977); *accord, United States ex rel. Bibbs v. Twomey*, 506 F.2d 1220, 1222 (7th Cir. 1974),

*appeal after remand*, 538 F.2d 151 (1976) (*en banc*), *cert. denied*, 429 U.S. 1102, 97 S.Ct. 1126, 51 L.Ed.2d 551 (1977); *United States ex rel. Harris v. State of Illinois*, 457 F.2d 191, 198 (7th Cir.), *cert. denied*, 409 U.S. 860, 93 S.Ct. 147, 34 L.Ed.2d 106 (1972). The Fifth Circuit's standard for judging a constitutional error of a state in admitting prejudicial evidence is whether it is "material in the sense of a crucial, critical, highly significant factor [in the outcome of the case]." *Lawrence v. Wainwright*, 445 F.2d 281, 282 (5th Cir. 1971) (*citing Luna v. Beto*, 395 F.2d 35, 41 (5th Cir. 1968) (*en banc*), (Brown, Chief Judge, concurring specially, in which 7 judges joined), *cert. denied*, 394 U.S. 966, 89 S.Ct. 1310, 22 L.Ed.2d 568 (1969)). *Accord, Anderson v. Maggio*, 555 F.2d 447, 451 (5th Cir. 1977). By that standard, the other crimes and wrongs here were not material. As the district judge wrote: "While petitioner may not have enjoyed an error-free trial at the state level, the cumulative effect of the erroneous rulings by the trial court did not deprive the petitioner of due process of law within the meaning of the Fourteenth Amendment."

Closely tied to the test of a denial of fundamental fairness is the third factor in our decision to uphold the denial of the writ: the strength of the evidence against petitioner makes any such error here harmless beyond a reasonable doubt. Where the evidence of guilt "while clearly sufficient" is "not exceedingly strong," there may be "a reasonable possibility that the error might have contributed to the conviction." *United States ex rel. Smith v. Rowe*, 618 F.2d 1204, 1213 (7th Cir.), *vacated and remanded on other grounds*, 449 U.S. 810, 101 S.Ct. 57, 66 L.Ed.2d 13 (1980). However, where, as here, the evidence of guilt is so strong that, even without the admission of the disputed evidence, the state proved its case against the petitioner beyond a reasonable doubt, the writ should not issue. *Compare United States ex rel. Ross v. LaVallee*, 448 F.2d 552, 554 (2d Cir. 1971) (Erroneously admitted statement of co-defendant was harmless due to "overwhelming independent evidence against petitioner . . . .");

*Subilosky v. Moore,* 443 F.2d 334, 336 (1st Cir.), *cert. denied,* 404 U.S. 958, 92 S.Ct. 328, 30 L.Ed.2d 276 (1971) (Admission of prior invalid convictions to impeach defendant harmless error in view of "relative insignificance" of evidence and "persuasiveness of the other evidence."); *United States ex rel. Gaines v. Rundle,* 435 F.2d 700, 701 (3d Cir. 1970) (Habeas relief was denied due to other "strong affirmative evidence" of guilt and the fact that the illegally seized evidence "contributed nothing material to the case against him."); *United States v. Garrison,* 280 F.2d 493, 499 (7th Cir. 1960) (Improper question to defendant not reversible error in light of jury instructions to disregard the question and the "clear and convincing" evidence of guilt), with *Potts v. Estelle,* 529 F.2d 450, 455 (5th Cir. 1976) (It was not harmless error to admit evidence of nine uncounseled misdemeanor convictions of defendant where the effectiveness of his testimony hinged largely on the jury's assessment of his credibility and the improper evidence went directly to that credibility.); *Favre v. Henderson,* 464 F.2d 359, 366 (5th Cir.), *cert. denied,* 409 U.S. 942, 93 S.Ct. 235, 34 L.Ed.2d 193 (1972) (Erroneous admission of police testimony about informants' reports where defendant was denied the right to confront the informants as witnesses against him, was not harmless error because, "[w]ithout the disputed testimony, the prosecution had a questionable case, . . . .").

## COERCION OF JURY BY REPLAYING TAPES

The most troublesome question raised by petitioner is whether the judge impermissibly intruded on the jury's function and coerced the jury into a guilty verdict by offering to replay and replaying tapes of incriminating conversations, some twenty hours after he had turned down two jury requests, the first for transcripts of those tapes and the second for a machine to play the tapes themselves.

The jury retired to deliberate on April 15 at 1 P.M. Some three hours later they sent a request to the judge for an Illinois road map and the transcript of certain tapes. Without notifying counsel, the court sent word to the jury that these items were not in evidence, as indeed they were not, although the content of the tapes had been played to the jury. It was within the judge's discretion to deny the jury the transcripts.[4] *United States v. Toney,* 440 F.2d 590, 591–592 (6th Cir. 1971); *see also United States v. Braverman,* 522 F.2d 218, 224 (7th Cir.), *cert. denied,* 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 302 (1975) (It was within the judge's discretion to have a tape of all instructions replayed in response to a jury inquiry and to allow the jurors to take notes while the tape was played.) Although a trial judge should consult with counsel before denying a request and give the answer in open court, a judge's refusal to grant a jury request for further instructions does not constitute impermissible "communication between the judge and the jury." *Miller v. Pate,* 300 F.2d 414, 423 (7th Cir. 1962), *cert. denied,* 371 U.S. 898, 83 S.Ct. 193, 9 L.Ed.2d 131 (1963). Therefore, although a judge should consult with counsel first, it is not a denial of due process to turn down *ex parte* a jury request for further instructions. *Accord, United States v. Medansky,* 486 F.2d 807, 816 (7th Cir. 1973), *cert. denied,* 415 U.S. 989, 94 S.Ct. 1587, 39 L.Ed.2d 886 (1974) (It was harmless error for judge to enter jury room, without objection of the attorneys, to explain his denial of transcripts to the jury and, in answer to a juror's query, state that the transcript was of a prior trial); *United States v. Di Pietto,* 396 F.2d 283, 287 (7th Cir. 1968), *vacated and remanded on other grounds,* 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969) (Not reversible error for judge, when informed jury was unable to reach a verdict,

---

4. In *United States ex rel. Latimore v. Sielaff,* 561 F.2d 691, 697 (7th Cir. 1977), *cert. denied,* 434 U.S. 1076, 98 S.Ct. 1266, 55 L.Ed.2d 782 (1978), it was not coercive for the judge to ignore a jury message at 10:25 P.M. that the jury could not reach a verdict and wished to be bedded for the night. The jury brought in a verdict of guilty the next morning at 3:22 A.M., after having deliberated through the night.

to send *ex parte* communication to jury to keep deliberating); *Estes v. United States*, 335 F.2d 609 (5th Cir. 1964), *cert. denied*, 379 U.S. 964, 85 S.Ct. 656, 13 L.Ed.2d 559 (1965) (Additional written charges to jury should have been given in open court, but failure to do so was not reversible error). *Compare United States v. Clavey*, 565 F.2d 111, 118–20 (7th Cir. 1977), *aff'd. on rehearing*, 578 F.2d 1219 (*en banc*) (*per curiam*), *cert. denied*, 439 U.S. 954, 99 S.Ct. 351, 58 L.Ed.2d 345 (1978) (Despite this circuit's disapproval, under Federal Rule of Criminal Procedure 43, of trial court's failure to notify counsel of jury inquiries and its refusal to answer those requests, such error was harmless). *Compare United States ex rel. Tobe v. Bensinger*, 492 F.2d 232, 238–39 (7th Cir. 1974) (Although communications between jury and court or third person, such bailiff, "outside the presence of the defendant and his counsel are presumptively prejudicial," if "the communications were harmless or lacked prejudice," the writ will not issue; statements in nature of an *Allen* charge by bailiff telling jurors they had to keep deliberating and reach a decision had "a coercive effect resulting in prejudice to the defendant where they [were] void of such an admonition" that "no juror should relinquish his conscientiously held convictions to join in the majority verdict" because "any influence which emphasizes the importance of agreement to the exclusion of the dictates of conscience is coercive and prejudicial."); *and United States v. Dellinger*, 472 F.2d 340, 378–80 (7th Cir. 1972), *cert. denied*, 410 U.S. 970, 93 S.Ct. 1443, 35 L.Ed.2d 706 (1973) (Generally communications to jury from judge should be in open court, although *ex parte* messages denying transcripts or to keep deliberating have been harmless in other cases, but error was not harmless where matter was not brought

to counsel's attention until months later in an article on the "Chicago Seven", there was evidence the verdict might have been a compromise, and the marshal was said to have told the jury that "the jury might be sequestered for a substantial further period before the judge would accept the fact of a hung jury.").

Sometime after the judge had denied the transcripts, the jury requested a tape recorder and the tapes, a request which, according to at least one circuit, he could have granted. *Hamilton v. United States*, 433 F.2d 526, 530 (D.C.Cir.1970), *cert. denied*, 402 U.S. 944, 91 S.Ct. 1612, 29 L.Ed.2d 112 (1971). However, the trial court, after consulting with counsel, determined to deny the request. The federal habeas court's statement that the trial judge denied the request "for reasons unrelated to the propriety of the request" is not altogether correct. At the time he denied the request, the judge pointed out not only that the jury might damage the tapes or accidentally erase a portion but also that the jury had heard the material on the tapes sufficiently at trial and during closing argument. Both sides agree that it was within the sound discretion of the trial judge to deny the request, whichever was his primary reason for doing so.[5]

In hindsight, it is obvious that if the judge's only concern was the jury's inability to operate the machine without damaging the tapes, he should have told the jury immediately that it could return to open court to have the tapes replayed.[6] Instead, he did not offer the jury that option until much later, after it had deliberated a total of twenty hours (without discounting dinner and lunch time for two days), at which point he called in counsel to announce his intentions. He told them he intended to recall the jurors, inquire if they were mak-

---

**5.** At least one circuit has held that it was not reversible error for the judge to allow an F.B.I. agent who was a witness for the prosecution to replay the tapes for the jury in closed Court with the presence of counsel for defendant, rather than with defendant present in open court, although it said it would not condone such practice in the future. *United States v. Florea*, 541 F.2d 568, 570–72 (6th Cir. 1976),

*cert. denied*, 430 U.S. 945, 97 S.Ct. 1579, 51 L.Ed.2d 792 (1977).

**6.** The content of the tapes, while introduced primarily in support of the two conspiracy counts that were later thrown out, was also corroborative of an overt act committed prior to Weathington's collaboration with the police.

ing progress, and, if the answer was no, ask if replaying the tapes would be helpful. He gave no indication what he would do if the foreman said they *were* making progress, which in fact is what he did answer. At that juncture, the judge asked the foreman, and each juror in turn, "Would it help, in your opinion, in this case if you were to hear the tapes played here in the courtroom?"

When each answered in the affirmative, he directed that the tapes be replayed, after which the jury resumed deliberations for 45 minutes before bringing in a verdict of guilty of conspiracy and solicitation.

Petitioner seems to argue that the judge's replaying of the tapes was not the delayed grant of a jury request that he had initially denied but was the selection by the judge of certain evidence to highlight, which intruded impermissibly on the jury's function. We do not accept that reading of the situation. In our opinion, that very material had been requested twice by the jury. The state appellate majority did not address the issue, as the justice who wrote the opinion dissented on that point. He stated he believed that the trial judge, by replaying the tapes, implied to the jury that he considered that evidence to be critically important. He said that the court abused its discretion by volunteering the evidence to the jury and thus directing its attention to that evidence. We disagree with the state court dissent. In our opinion the trial judge did not direct the jury's attention to material *he* selected but merely replayed

for the jury the very material the *jury itself* had selected and twice requested hearing. The Second Circuit has gone so far as to allow a judge to add evidence to a jury request, which the judge did not do here:[7]

> [R]eversal for submitting material in addition to that requested is required only where the submission might indicate, or be fairly taken by the jury to indicate, prejudice of the judge against the defendant, as, e.g., when the judge insisted on submitting evidence favorable to the prosecution that was in no way germane to the request, or when it leads to biasing of the record.

*United States v. Gentile*, 525 F.2d 252, 261 (2d Cir. 1975), *cert. denied*, 425 U.S. 903, 96 S.Ct. 1493, 47 L.Ed.2d 753 (1976). That court cited with approval the ABA Standards Relating to the Administration of Criminal Justice, Trial by Jury § 5.2(b) (1968).[8]

▪ We see the only valid issue, then, as *not* whether the judge impermissibly focused the jury's attention on evidence in which it had shown no interest,[9] but whether, by delaying so long in granting the request, the judge had lost the discretion to grant the request that he admittedly had at the moment it was first made. The petitioner's second argument as to the delay— that the belated replaying had a coercive effect on the jury because it had passed the point of needing to rehear that evidence— is, in our opinion, less persuasive. Not only

---

7. This circuit has held that a judge can add to the instructions he is requested by the jury to reread or reread all the instructions if he feels such is necessary to avoid confusing or misleading the jury. *United States v. Castenada*, 555 F.2d 605, 611–12 (7th Cir.), *cert. denied*, 434 U.S. 847, 98 S.Ct. 152, 54 L.Ed.2d 113 (1977).

8. The Standard, as quoted by the Second Circuit, provides that the judge *must* grant a jury request to review specific evidence and *may*, in its discretion add "other evidence relating to the same factual issue so as not to give undue prominence to the evidence requested." *Id.* at 260–61.

9. We find the two major cases relied on by petitioner to be inapposite. In *People v. Balti-*

more, 7 Ill.App.3d 633, 288 N.E.2d 659 (1972), the judge asked the deadlocked jury in a murder case whether it could reach a verdict without regard to the death sentence. Unlike the present case, the judge's remark was coercive in that it could have indicated to the jury that the judge believed the defendant was guilty and it was not made in answer to a jury request. Likewise, the judge's statement in *People v. Golub*, 333 Ill. 554, 165 N.E. 196 (1920) was coercive: when the jury reported itself deadlocked, he said that they should have no trouble reaching a verdict on that evidence, which could have been taken by the jury to mean that the defendant was clearly guilty in the judge's opinion.

is it based on pure surmise, but it is belied by the jurors' unanimous affirmative responses to the judge's query as to whether replaying the tapes would be helpful.

It is true that "[c]ommunications between judge and jury must be handled with particular care ..." *United States v. Peskin*, 527 F.2d 71, 85 (7th Cir. 1975), *cert. denied*, 429 U.S. 818, 97 S.Ct. 63, 50 L.Ed.2d 79 (1976) (It was not coercive for the judge to ask the jurors if they thought they could reach a verdict if he gave them one-half hour more, at least absent an objection by defendant at the time.). Two cases from this circuit are helpful on the issue of whether the timing of the judge's communication to the jury about replaying the tape made it coercive. One, cited by the federal habeas court, deals with whether, when there is a lack of deadlock, the *Allen* charge is warranted; by analogy it provides some precedent for holding that repeating evidence or instructions to a non-deadlocked jury is not *per se* coercive. In *United States v. DeStefano*, 476 F.2d 324 (7th Cir. 1973), defendant argued that giving the *Allen* charge to a jury that had given no indication of deadlock was coercive. This court rejected that argument, distinguishing a Ninth Circuit case that bolstered DeStefano's contention, *United States v. Contreras*, 463 F.2d 773 (9th Cir. 1972), because the jury in *Contreras*, by asking for further instructions, had shown confusion about the law rather than an inability to reach a verdict. *DeStefano, supra*, at 337. This Court found that the timing of the charge was not only *not* coercive *per se* but was not "a violation of the ABA Standards," which state that a court can give the *Allen* charge "[i]f it appears to the court that the jury has been unable to agree, . . . ." *Id.* at 336–37. In contrast to the jury in *Contreras*, the *DeStefano* jury, by not yet announcing a deadlock, had not shown an inability to reach a verdict. Indeed, the *DeStefano* court found that the *Allen* charge was *less* coercive because the jury had not yet announced to the court that it was deadlocked.

Furthermore, the fact that the jury did not indicate that it was deadlocked before the instruction was given may actually be taken as evidence that the charge was not coercive, since under such circumstances dissenting jurors would be less likely to believe that the trial judge was trying to shake their decision. *Id.* at 337. *Accord, Munroe v. United States*, 424 F.2d 243, 247 (10th Cir. 1970) (*Allen* charge, although verdict followed 40 minutes later, was not coercive where jury was making progress when charge was given). Following the reasoning of *DeStefano*, the fact that the jury that found petitioner guilty here had announced that it was making progress was one factor tending to show *lack of coercion* from the replaying of the tapes; a non-deadlocked jury is less susceptible to such coercion.

It is true that the court in *DeStefano* also cited the four-hour delay in verdict after the *Allen* charge as a factor in determining lack of coercion. *DeStefano, supra*, at 337. *Accord, United States v. Bambulas*, 471 F.2d 501, 506 (7th Cir. 1972) (Four hours' deliberation after *Allen* charge was a factor in determining lack of coercion.) Although the jury here reached a verdict after forty-five minutes, it had already deliberated twenty hours when the tapes were replayed and could have been on the verge of a verdict at any rate; the foreman had announced they were making progress. The ABA Standards, *supra*, Commentary to § 5.4(b) at 154, and some courts consider shortness of time in reaching a verdict after an *Allen* charge as irrelevant to whether the charge was coercive when given, *e.g.*, *United States v. Giacalone*, 588 F.2d 1158, 1167–68 (6th Cir. 1978), *cert. denied*, 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979). Still others have found no coercion even where the verdict was returned in a very short time after the charge was given, *e.g.*, *United States v. Betancourt*, 427 F.2d 851 (5th Cir. 1970) (Just under two hours); *United States v. Hynes*, 424 F.2d 754 (2nd Cir.), *cert. denied*, 399 U.S. 933, 90 S.Ct. 2270, 26 L.Ed.2d 804 (1970) (Five minutes). This court has upheld a verdict as noncoercive that was rendered only twenty minutes after a polling showed eleven of twelve

jurors reported deadlocked and an hour after an earlier *Allen* charge where the jury had deliberated almost thirteen hours before the *Allen* charge was given. *United States ex rel. Anthony v. Sielaff*, 552 F.2d 588 (7th Cir. 1977). Considering the danger inherent in the so-called dynamite charge, as opposed to merely rehearing evidence already heard, the time lapse before verdict here does not indicate coercion.

Another Seventh Circuit case, not cited by either side, is even more helpful on the issue of whether the timing of the judge's belated offer to comply with the jury's request was coercive.[10] Petitioner, in *United States v. Quintana*, 508 F.2d 867, 878 (7th Cir. 1975), protested "the alleged failure of the trial judge to make a prompt response to the jury's request for a definition of the words 'entrapment' and 'coercion'." The jury request, involving the defendant's principal defenses, was made about 6 p. m. one day, six hours after beginning its deliberations. Upon receiving word from the marshal that the judge wished them to keep deliberating until they heard from him, they continued until 10:15 p. m. Although they resumed deliberations at 9 a. m. the next morning, they were not re-read the key instructions until 10:30 a. m. *Twenty minutes later*, the jury reached a verdict. This court wrote:

> [Petitioner] does not complain that the instructions given were incorrect, but rather that allowing the jury to remain in some confusion on those defenses for five hours of deliberation was prejudicial error where entrapment and coercion were the principal grounds of his defense. . . .

> The ultimate test is whether the procedure as a whole was so likely to have confused the jury that reversal is required. . . . We hold that it was not. . . . [T]he jury was not under great pressure

to terminate its deliberations. After the jury heard the supplemental instructions the jurors continued to deliberate for twenty minutes. The verdict they reached was consistent with the overwhelming weight of the evidence.

*Id.* at 878. We do not believe that the petitioner has carried his burden of showing that the judge's belated grant of the jury's request for the tapes, even if unwisely delayed, so confused the jury or intruded on its function as to deny petitioner due process and require that his conviction be vacated.

We therefore affirm the grant of the writ as to the conspiracy conviction and the denial of the writ as to the solicitation conviction.

AFFIRMED.

SWYGERT, Senior Circuit Judge, concurring in part and dissenting in part.

I respectfully dissent from the majority's holding that the replaying of certain tapes for the jurors during their deliberations did not deny petitioner a fair trial. I believe that the judge's actions interrupting the jury's deliberations so prejudiced petitioner as to violate his constitutional right to a fair trial by an impartial jury.

Prior to sending the jury out to deliberate, the trial judge determined that he would not allow tapes of conversations between petitioner and a key prosecution witness played into evidence at the trial to be taken into the jury room during deliberations. About two hours into deliberations, the jury sent a message to the judge asking for a road map and a transcript of the tapes. The judge denied the request, without informing counsel, because neither item was in evidence. The jurors then asked that the tapes and a tape recorder be sent

---

**10.** Respondent primarily relies on *People v. Reynolds*, 57 Ill.App.3d 593, 15 Ill.Dec. 304, 373 N.E.2d 650 (1978) on this issue. In *Reynolds* one juror could not reach a verdict without review of certain testimony, but the court, believing that such would involve too much time, refused the foreman's request. Shortly thereafter, upon reconsideration, the judge asked that the juror narrow the request to the specific testimony desired and then had the reporter read back the identification testimony of the police officers that was specified, while refusing defendant's request that it be put in context by a rereading of the cross-examination of the officers. However, the delay in granting the request in *Reynolds* was minimal next to the time lag in acceding to the jury's request in the instant case.

in. The judge discussed the question with the attorneys for both sides, then denied the request on the grounds that the jurors might accidentally damage the tapes and that the jurors had heard the tapes enough during the trial.

The jury deliberated for the rest of that day and part of the next when the trial judge informed the attorneys that he was going to call the jury back into court to ask if they were making progress and if not, to ask whether hearing the tapes again would help them arrive at a verdict. Counsel for petitioner objected, contending that replaying the tapes at that time would place prejudicial emphasis on that evidence. Despite this objection, the judge had the jury brought back into the courtroom and asked the foreman if the jury was making progress in its deliberations, to which the foreman answered in the affirmative. The trial judge nevertheless asked each juror if it would help them to hear the tapes again, and each juror said yes. The tapes were then played for the jury over petitioner's objections. The jury retired to the jury room for forty-five minutes before returning a guilty verdict.

Errors of the trial court will not be reviewed by a federal court considering a petition for habeas corpus unless those errors amount to a constitutional violation. *See Scalf v. Bennet*, 408 F.2d 325, 327 (8th Cir. 1969), *cert. denied*, 396 U.S. 887, 90 S.Ct. 175, 24 L.Ed.2d 161 (1969). The Sixth Amendment, made applicable to the states by the Due Process Clause of the Fourteenth Amendment, guarantees a criminal defendant the right to trial by an impartial jury and statements or actions by the trial court that could influence the jurors violate this constitutional right and the due process right to a fair trial. *Cf. Parker v. Gladden*, 385 U.S. 363, 364–66, 87 S.Ct. 468, 470–471, 17 L.Ed.2d 420 (1966).

Considering the facts in the instant case, I believe that the trial court's decision to replay the tapes could have resulted in the overemphasis of the probative value of the tapes or could have been construed by the jurors as an indication that the trial judge wanted them to return a verdict of guilty. It may have been proper, as the majority concludes, for the judge to have replayed the tapes in response to the jury's request, but here the trial court denied that request. After the jury had been deliberating for approximately twenty hours, he called them into court to ask if they were making progress. Then, despite the affirmative reply from the foreman, he played the tapes again for the jurors. This cannot be characterized as mere "delay" in responding to the jury's request to review this evidence because the trial judge had already expressly denied that request. In these circumstances, playing the incriminating tapes even after the jury indicated that it was progressing to a verdict was prejudicial. This conclusion that the jurors were influenced is further supported by the fact that after hearing the tapes, they returned a guilty verdict within forty-five minutes. *See United States v. Harris*, 391 F.2d 348, 356 (6th Cir. 1968).

For the foregoing reasons, I would reverse the district court's denial of the writ on the petitioner's conviction for solicitation.